**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-cv-50423 |
| | ) |
| HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207, et. al., | ) The Honorable Iain D. Johnston<br>) Magistrate Judge Margaret J. Schneider |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**BACKGROUND** ........ 2

**STANDARD FOR MOTION** ........ 5

**ARGUMENT** ........ 6

**I. Hononegah Community High School District #207 is not a proper party** ........ 6

**II. Doe cannot state a claim for First Amendment retaliation, thus Count I should be dismissed.** ........ 7

A. Doe was not engaged in protected First Amendment activity ........ 7

B. Doe lacks standing to bring the First Amendment claim. ........ 9

**III. The state law claims in counts II, IV, V, and VI should be dismissed with prejudice because the school district defendants are immune under section 2-201 of the Illinois Tort Immunity Act.** ........ 9

A. The state law claims in count II should be dismissed with prejudice because the school district defendants have immunity for willful and wanton release of private information. ........ 11

B. The state law claims in Counts IV, V, and Count VI should be dismissed pursuant to Section 2-201. ........ 13

**IV. Count II alleging willful and wanton release of private information should be dismissed with prejudice because the letter is not an "educational record" or a "student record."** ........ 16

A. FERPA does not convey enforceable rights and the emailed letter is not an "educational record" under FERPA. ........ 17

B. Doe has no standing to bring Count II. ........ 18

**V. Doe's breach of contract claim in Count III fails because no contract exists** ........ 20

A. The HCHS handbooks do not create contracts with Doe. ........ 20

B. There was no breach of the IHSA Constitution and By-Laws, and to the extent there was, Doe was not damaged.....23

**VI. Counts IV and VIII should be dismissed because Doe fails to state a claim for fraudulent concealment and willful and wanton concealment.**.....25

**VII. Count V alleging willful and wanton failure to protect should be dismissed with prejudice because the individual school district defendants owed no duty to Doe and Doe fails to plead willful and wanton conduct.**.....28

**VIII. Count VI alleging intentional infliction of emotional distress (IIED) should be dismissed because Doe cannot show any defendant's conduct was extreme and outrageous.**.....30

**IX. Count VIII (repeated) should be dismissed with prejudice because there is no private right of action under the Illinois School Code.**.....33

**X. Doe's civil conspiracy claim in Count IX and aiding and abetting claim in Count X should be dismissed for failing to state a cause of action.**.....34

**XI. Doe's prayer for relief in certain counts is unavailable as a matter of law.**.....35

**CERTIFICATE OF SERVICE**.....38

# TABLE OF AUTHORITIES

**Cases**

*145 Fisk, LLC v. Nicklas*, 986 F.3d 759 (7th Cir. 2021) ....................7, 8, 9

*Abazari v. Rosalind Franklin University of Medicine and Science*, 2015 IL App (2d) 140952, 40 N.E.3d 264 (2015) ....................26

*Albers v. Breen*, 346 Ill.App.3d 799, 806 N.E.2d 667 (4th Dist. 2004) .................... 11, 12, 14, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................5, 6

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)....................5, 6

*Board of Educ. Of Bremen High School Dist. No. 228 v. Mitchell*, 387 Ill.App.3d 117, 899 N.E.2d 1160 (1st Dist. 2008)....................7

*Brookman as next friends of A.B. v. Reed-Custer Community Unit, School District 255-U*, No. 18 C 7836, 2019 WL 4735395 (N.D. Ill. 2019).................... 12, 13, 14

*Cirrincione v. Johnson*, 184 Ill.2d 109, 114, 703 N.E.2d 67 (1998) ....................36

*Cnty. Bd. of Sch. Trustees of DuPage Cnty. v. Ass'n of Franciscan Fathers*, 49 Ill.App.3d 686, 364 N.E.2d 691 (2d Dist. 1977) ....................28

*Collins v. Board of Educ. of North Chicago Community Unit School Dist. 187*, No. 10–cv–03329, 792 F.Supp.2d 992 (N.D. Ill. 2011).................... 33, 34, 35

*Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 675 N.E.2d 584 (1996) ....................27

*DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973 (7th Cir. 2000)....................6

*Douglas v. Lofton*, No. 12 C 8592, 2013 WL 2156053 (N.D. Ill. 2013) ....................32

*Duldulao v. Saint Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 505 N.E.2d 314 (Ill. 1987)21

*Fisher v. Lexington Health Care, Inc.*, 188 Ill.2d 455, 722 N.E.2d 1115 (1999) ....................34

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S. Ct. 2268 (2002) ....................17

*Hascall v. Williams*, 2013 IL App (4th) 121131 (2013) ....................10, 12, 14, 15, 16

*Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006)....................35

*Hutsonville Community Unit School District No. 1 v. Illinois High School Association*, 2021 IL App (5th) 210308, 195 N.E.3d 798 (2021)....................24

*Jackson v. Indian Prairie SD 204*, 08 C 4312, 2009 WL 10681225 (N.D. Ill. 2009) ....................17

*John K. v. Board of Educ. For School Dist. No. 65, Cook County*, 152 Ill.App.3d 543, 504 N.E.2d 797 (1st Dist. 1987)....................19

*Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 607 N.E.2d 201 (1992)....................31

*Krywin v. Chicago Transit Authority*, 238 Ill.2d 215, 938 N.E.2d 440 (2010)....................25

*Lawson v. City of Chicago*, 278 Ill.App.3d 628, 662 N.E.2d 1377 (1st Dist. 1996) ....................29

*Malinksi v. Grayslake Community High School Dist. 127*, 2014 IL App (2d) 130685, 16 N.E.3d 915 (2014) ....................14

*Massey v. Johnson*, 457 F.3d 711 (7th Cir. 2006)....................7

*Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000)....................9

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ....................6

*McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806 (1988)....................30

*Merkel v. Galva CUSD 224*, 4:23-cv-04130-SLD-JEH, 2024 WL 4339594 (C.D. Ill. 2024)....................31, 32, 33

*Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill. 2d 560, 739 N.E.2d 1263 (2000)....................36

*Mulvey v. Carl Sandburg High School*, 2016 IL App (1st) 151615, 66 N.E.3d 507 (2016).................... 21, 22, 23, 24

*Nardella v. Leyden High School District 212*, 2016 WL 3418571 (N.D. Ill. 2016) ....................32, 33

*Oravek v. Cmty. Sch. Dist. 146*, 264 Ill.App. 3d 895, 637 N.E.2d 554 (1st Dist. 1994)....................30

*Owasso Independent School Dist. No. I-011 v. Falvo*, 534 U.S. 426, 122 S.Ct. 934 (2002)....................18

*Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill.App.3d 127, 488 N.E.2d 623 (1st Dist. 1986) ....................24

*Purevdori v. Mission Hills Condo. T-2 Assn.*, 2024 IL App (1st) 231693 (2024)....................30

*Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, 77 N.E.3d 50 (2016)....................31, 32

*Shondel v. McDermott*, 775 F.2d 859 (7th Cir. 1985) ....................7

*Smoler v. Board of Education for West Northfield School District #31*, 524 F.Supp.3d 794 (N.D. Ill. 2021) ....................7

*Snyder v. Curran Township*, 167 Ill.2d 466, 474, 657 N.E.2d 988 (1995)....................10, 13

*Squires-Cannon v. Forest Preserve District of Cook County*, 897 F.3d 797 (7th Cir. 2018)....................27, 35

*Strauss v. City of Chicago*, 2022 IL 127149, 215 N.E.3d 87, 101 (2022) ....................10, 13

*Wesley v. South Bend Community School Corporation*, 19-cv-32-PPS-MGG, 2019 WL 5579159 (N.D. Ind. 2019) ....................7, 8, 9

*Ziarko v. Soo Line Railroad*, 161 Ill.2d 267, 641 N.E.2d 402 (1994) ....................25

*Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill.App.3d 154, 510 N.E.2d 409 (1st Dist. 1986)....................27

**Statutes**

105 ILCS 5/ ....................33

105 ILCS 5/10-2....................6

105 ILCS 5/10-20.12b ....................33, 35

105 ILCS 10/2(d) ....................19

105 ILCS 10/5 ....................19

745 ILCS 10/1-206 ....................36

745 ILCS 10/2-201 ....................9, 10, 12, 13, 14, 15, 16

745 ILCS 10/2-213 .......................................................................................................36

20 U.S.C. § 1232g(a)(4) .................................................................................................17

Defendants, Hononegah Community High School District #207, Hononegah Community School District #207 Board of Education, Chad Dougherty, Brian Zimmerman, Jeremy Warren, Andrew Walters, and Kendra Asbury (collectively referred to as the "school district defendants"), by their attorneys, Julie A. Bruch and Lance A. Neyland of IFMK Law, Ltd., pursuant to Fed.R.Civ.P. 12(b)(6) move to dismiss the first amended complaint of plaintiff John Doe. In support of this motion and for their memorandum of law in support, the school district defendants state as follows:

Plaintiff, John Doe, is a student at Hononegah Community High School (HCHS). Doc. 22 ¶5. The Hononegah Community School District #207 Board of Education (BOE) is the district's school board and has seven members. Doc. 22 ¶8. Chad Dougherty is the principal of HCHS. Doc. 22 ¶10. Brian Zimmerman is the head football coach of HCHS Boys' Varsity Football Team. Doc. 22 ¶11. Jeremy Warren is the assistant quarterback coach of the HCHS Boys' Varsity Football Team. Doc. 22 ¶12. Andrew Walters is the athletic director of HCHS. Doc. 22 ¶13. Kendra Asbury is the Chief Title IX Officer for HCHS. Doc. 22 ¶14. Defendants Brian and Nicole Kelly are the parents of Doe's former teammate, the Transfer Student, and are not part of this motion. Doc. 22 ¶¶15–16.

Doe has brought an eleven-count complaint against the defendants with the following claims: Count I – First Amendment retaliation claim v. all defendants; Count II – willful and wanton release of private information v. unknown defendants; Count III – breach of contract or implied contract v. HCHS, Dougherty, Walters, Zimmerman, Warren, and Asbury; Count IV – willful and wanton concealment v. Dougherty, Walters, Zimmerman, Warren, and Asbury; Count V – willful and wanton failure to

protect v. Dougherty, Walters, Zimmerman, Warren, and Asbury; Count VI – intentional infliction of emotional distress v. Dougherty, Walters, Zimmerman, and Warren; Count VII – Residency Fraud v. Brian Kelly and Nicole Kelly; Count VIII – Fraudulent Concealment v. all defendants; Count VIII (repeated) – violations of Illinois School Code v. all defendants; Count IX – civil conspiracy v. all defendants; and Count X – aiding and abetting v. all defendants. Doc. 22.

**BACKGROUND**

Doe is a student at HCHS and formerly was a member of the varsity football team. Doc. 22 ¶1. Doe alleges that around November 2023, Transfer Student moved from Wisconsin back to Illinois into temporary housing with his parents, defendants Brian and Nicole Kelly. Doc. 22 ¶¶19–21. Transfer Student was a starting team member for the HCHS varsity football team for the 2024-2025 season. Doc. 22 ¶18. Doe alleges that Transfer Student was illegally recruited to play for the HCHS football team by coaches Zimmerman and Warren and that Brian Kelly secured the temporary housing in Illinois for sole purpose of his son attending HCHS and playing sports. Doc. 22 ¶21.

On September 18, 2024, Doe's parent sent a letter to Athletic Director Walters and Head Coach Zimmerman regarding the alleged residency issues with Transfer Student. Doc. 22 ¶29. Zimmerman replied to the letter and the school district defendants filed paperwork regarding Transfer Student's eligibility and residence to the Illinois High School Association ("IHSA"). Doc. 22 ¶¶30–31. In response, IHSA placed HCHS football on probation, made the HCHS varsity football team forfeit one game that the

Transfer Student played, and made Transfer Student ineligible for an upcoming game until the proper paperwork was filed. Doc. 22 ¶32.

Doe alleges in a conclusory fashion that around September 20, 2024 a copy of his parent's letter was shown to the Transfer Student by one or some of the defendants. Doc. 22 ¶34. On September 24, 2024, Zimmerman told the team that they had to forfeit a game because of paperwork issues. Doc. 22 ¶38. Doe further alleges, again in a conclusory fashion, that he was bullied and retaliated against because his parent's identity was made known to the Transfer Student as the person who brought forward the residency and eligibility issues. Doc. 22 ¶¶39–40. In response to the alleged bullying, Doe's parent sent a letter on September 25, 2024 to HCHS Principal Dougherty, Zimmerman, Walters, HCHS Superintendent Michael Dugan, and HCHS School Board President David Kurlinkus and reported the alleged bullying along with a request for an update on the parent's residency inquiry. Doc. 22 ¶40. That same day, Dougherty responded by acknowledging the parent's reports of bullying and attempted to meet with the parent and Doe in person, but Doe and his parent declined. Doc. 22-8, Ex. 8.

Doe alleges that nothing occurred in response to his parent's request and that harassment continued by his teammates at practice and at school. Doc. 22 ¶¶42–44. Doe further alleges that Zimmerman and/or Warren also retaliated against him by reducing his playing time and at one game telling Doe that "if you don't want to be here, just walk away." Doc. 22 ¶45. Doe's parent continued to report the alleged incidents and on September 26, 2024, Doe's parent received an update on Principal Dougherty's

investigation. Doc. 22-8, Ex. 8. In the September 26 email, Dougherty stated that the school initiated a bullying investigation by meeting with students and coaches. *Id.* Dougherty stated that there would be a meeting between administration and the football coaches to reaffirm district expectations along with a team meeting held by administration to set expectations for student athletes. *Id.* Doe and his parent refused to provide HCHS with names of persons who allegedly bullied him. Doc. 22-8 PageID 538, Ex. 8.

Doe's parent continued to send letters about alleged residency matters and the bullying investigation. Doc. 22 ¶¶48–49, 54; Docs. 22-9, 22-10, Exs. 9, 10. In one letter sent to HCHS administration, coaches, and the IHSA Executive Director on October 2, 2024, Doe's parent alleged that the Kellys' falsified residency documentation and that HCHS violated transfer and eligibility rules. Doc. 22 ¶54; Doc. 22-12; Ex. 12. That same day, Dougherty sent another investigation update to Doe's parent advising that he interviewed thirteen students and seven coaches. Doc. 22 ¶55; Doc. 22-13, Ex. 13. While Dougherty stated that the interviews did not identify or corroborate any current students engaging in the alleged infraction, the school had put in place supportive measures such as heightened supervision and administrative presence at football practice. Doc. 22-13, Ex. 13.

On October 7, 2024, Doe's parent requested an investigation into the alleged recruitment and retaliation by HCHS coaches. Doc. 22 ¶57; Doc. 22-14, Ex. 14. The same day, the school district's attorney responded to the allegations and requests. Doc. 22-15, Ex. 15. On October 21, 2024, Doe's parent further stated that after a team meeting

regarding bullying and retaliation, Doe's younger sibling was bullied and intimidated. Doc. 22 ¶60. An investigation was conducted and Dougherty responded to Doe's parent stating he took disciplinary measures with the student in line with the Student Code of Conduct and was continuing to monitor the situation. Doc. 22-16, Ex. 16.

On November 11, 2024 Asbury wrote to Doe's parent updating the parent on the investigation into the alleged retaliation by coaches against Doe. Doc. 22 ¶61; Doc. 22-17, Ex. 17. Asbury stated that Coach Zimmerman admitted to addressing Doe outside of the huddle when Doe did not join in. Doc. 22-17, Ex. 17. Asbury further stated that review of the game footage and witness observations were reviewed and showed that Doe was not engaged during the game, often was facing away from the field, pacing on the track away from the sidelines, and separating himself from other players and coaches. *Id.* Asbury stated that the investigation revealed no harassing or retaliatory actions, but the same supportive measures were in place to protect Doe. *Id.*

**STANDARD FOR MOTION**

To withstand a motion to dismiss, the allegations in a complaint must meet the plausibility standard set forth in *Iqbal* and *Twombly*. A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007). A pleading that contains a formulaic recitation of the elements of a claim will not do, nor will a complaint that is devoid of factual enhancement. *Iqbal* at 678. A complaint has facial plausibility if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The

standard requires more than a sheer possibility that the defendant violated the law. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.*, citing *Twombly*, 550 U.S. at 557; *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). A plaintiff is required to provide some specific facts supporting the legal claims and enough details about the subject matter of the case to present a story that holds together. *Id.* The court may disregard legal conclusions on a motion to dismiss. *Id.* at 617.

**ARGUMENT**

Doe engages in impermissible "shotgun pleading" in his first amended complaint. Numerous counts in the complaint reallege preceding counts regardless of the incorporated paragraphs materiality or consistency, and the complaint is replete with unsubstantiated conclusory allegations. For these reasons alone, the first amended complaint should be dismissed without prejudice.

**I. Hononegah Community High School District #207 is not a proper party.**

Hononegah Community High School District #207 is an improper party to this lawsuit and should be dismissed because it does not have the capacity to sue or be sued. Federal courts look to state law to determine if a defendant is amenable to suit. *See DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 977 n.2 (7th Cir. 2000) (citing Fed. R. Civ. P. 17(b)). Under the Illinois School Code, a school district's board of education has the capacity to sue or be sued, not the school district. 105 ILCS 5/10-2. *Board of Educ. Of Bremen High School Dist. No. 228 v. Mitchell*, 387 Ill.App.3d 117, 124, 899 N.E.2d 1160,

1166 (1st Dist. 2008). Federal courts have acknowledged the same. *See Smoler v. Board of Education for West Northfield School District #31*, 524 F.Supp.3d 794, 802-03 (N.D. Ill. 2021) (noting four other district courts finding the same). Thus, Hononegah School District #207 should be dismissed with prejudice as an improper party.

## II. Doe cannot state a claim for First Amendment retaliation, thus Count I should be dismissed.

In Count I, Doe attempts to bring a claim against the school district defendants under Section 1983 for First Amendment retaliation. To state a First Amendment retaliation claim, Doe must plausibly allege (1) that *he* was engaged in protected First Amendment activity, (2) that he suffered a deprivation that would likely deter First Amendment activity in the future, (3) and that the speech was at least a motivating factor in the Defendants' actions. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (citing *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006))(emphasis added). Here, Doe fails to plausibly allege that *he* was engaged in protected First Amendment activity and lacks standing to bring this claim.

### A. Doe was not engaged in protected First Amendment activity.

It is well settled in the Seventh Circuit that a plaintiff cannot bring a First Amendment retaliation claim based upon the speech of a third party. *See 145 Fisk, LLC*, 986 F.3d at 766–67; *see Shondel v. McDermott*, 775 F.2d 859 (7th Cir. 1985) (finding that the plaintiff could not maintain a First Amendment claim based on her stepfather's speech); *see Wesley v. South Bend Community School Corporation*, 19-cv-32-PPS-MGG, 2019 WL 5579159 (N.D. Ind. 2019). In *145 Fisk*, the Seventh Circuit upheld a district court's

dismissal of a First Amendment retaliation claim where a plaintiff did not engage in protected activity of its own. 986 F.3d at 767. Rather, the plaintiff relied on a non-party's protected activity, and the court thus found that "the [*non-party's*] exercise of *its* First Amendment petition rights . . . cannot be [plaintiff's] 'protected conduct' . . . ." *Id.* (emphasis in the original).

In *Wesley*, the plaintiff was a member of a high school basketball team. *Wesley*, 2019 WL 5579159, *1. The plaintiff alleged that because of his family members' expressive conduct and speech, the varsity basketball coach began treating him differently than other players, unfairly criticizing him, ostracizing him, giving him less playing time in games, and not recognizing him at an awards banquet. *Id.* at *1, *2. The *Wesley* court started by analyzing what the plaintiff's First Amendment claim was not about—noting that plaintiff was not claiming that he was retaliated against for something that he did or said. *Id.* at *3. Rather, the plaintiff alleged that the coach's retaliation was because of his family's speech. *Id.* In turn, the court noted that plaintiff's attempt to bring a First Amendment retaliation claim for the speech of others fails. *Id.* at *4 (distinguishing and clarifying district court cases cited by plaintiff).

Like the plaintiff in *Wesley*, Doe's basis for his First Amendment retaliation claim is not his own conduct, but the conduct of his parent. Doe pleads that "JOHN DOE's *parent* engaged in protected speech under the First Amendment when *she* reported concerns . . . ." Doc. 22 ¶73 (emphasis added). Doe further alleges that various coaches then retaliated against him because of his parent's speech. Doc. 22 ¶¶74, 75. Courts in this circuit have made clear that a retaliation claim based on third-party speech, like

Doe's claim here, necessarily fails as there is no such right in the First Amendment. *See 145 Fisk, LLC*, 986 F.3d at 766–67; *see Wesley*, 2019 WL 5579159, *3–5. Therefore, Doe's First Amendment claim should be dismissed with prejudice as Doe did not engage in any alleged protected First Amendment activity.

**B. Doe lacks standing to bring the First Amendment claim.**

Dismissal is also warranted because Doe lacks standing, to the extent that he is claiming he suffered an injury from any alleged retaliation against his parent's speech. There is a general prohibition against standing for third-party claims as "claims are best prosecuted by those who actually have been injured, rather than by someone in their stead." *See Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000). While there is a narrow exception to the general rule against third-party standing, that exception is not present here. Third party standing may exist "when the third-party plaintiff can show a close relationship between the first and third party and some obstacle to the first party's ability to protect his own interest." *Id.* Doe has not alleged that his parent has some obstacle in her ability to protect her own interests. Therefore, Doe does not have standing to bring a third-party claim. Accordingly, this Court should dismiss Count I with prejudice because Doe cannot state a claim of First Amendment retaliation.

**III. The state law claims in counts II, IV, V, and VI should be dismissed with prejudice because the school district defendants are immune under section 2-201 of the Illinois Tort Immunity Act.**

To the extent that a duty exists for any of Doe's state law claims in Counts II, IV, V, and VI, they should be dismissed with prejudice because the school district defendants are immune under Section 2-201 of the Illinois Local Government and Governmental

Employees Tort Immunity Act ("the Act"). Section 2-201 of the Act immunizes public employees from liability for injuries stemming from any acts or omissions when determining policy or exercising discretion. *See* 745 ILCS 10/2-201. This includes negligent and willful and wanton conduct. *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 59, 215 N.E.3d 87, 101 (2022). To determine if 2-201 immunity attaches, "courts look at the conduct itself rather than the intent behind it." *Id.* If the court determines that the school district defendants (1) held a position involving the determination of policy, or the exercise of discretion; and (2) the school district defendants engaged in both a determination of policy and an exercise of discretion—as opposed to a ministerial act—regarding the alleged act or omission, then they are immune from liability. *Hascall v. Williams*, 2013 IL App (4th) 121131, ¶ 23 (2013).

The Illinois Supreme Court recognizes policy determinations as "those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Strauss*, 2022 IL 127149, ¶ 61. Discretionary decisions involve the use of independent judgment on how and in what way an act should be performed. *Id.* Moreover, "discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Township*, 167 Ill.2d 466, 474, 657 N.E.2d 988, 993 (1995).

### A. The state law claims in count II should be dismissed with prejudice because the school district defendants have immunity for willful and wanton release of private information.

In Count II, Doe alleges that one or some of the school district defendants showed the September 18, 2024 letter from Doe's parent to the Transfer Student and that this was a willful and wanton release of private information in violation of the Illinois School Student Records Act.[1] Doc. 22 ¶83. While the school district defendants deny that they showed the letter to the Transfer Student, for purposes of this motion only, assuming that one of the school district defendants shared the letter, the school district defendants have immunity. To the extent that any of the school district defendants owed a duty to Doe, they have immunity because the decision to show and disclose the contents of the letter were discretionary acts. Thus, the state law claim in count II should be dismissed with prejudice.

In *Albers v. Breen*, a student reported that he was being bullied and the student's mother complained about the bullying to the school principal and superintendent—the mother did not tell the names of the bullies to the administration. 346 Ill.App.3d 799, 801, 806 N.E.2d 667, 670 (4th Dist. 2004). The student met with a school counselor about the bullying and disclosed the names of the bullies in confidence. *Id.* at 801–02. After promising not to share the names with anyone, the counselor then revealed the names to the principal who subsequently revealed to one of the bullies that the student had complained about them. *Id.* at 802. The court ultimately granted the principal and

[1] It is unclear which defendants are named in Count II.

Board's motion to dismiss on the ground that the principal was immune under 2-201 because the school principal's actions constituted a discretionary policy decision. *Id.* at 808–09. The court stated that "[a] school principal dealing with a disciplinary matter must balance competing interests—the confidentiality of his information source, the appropriate level of punishment, the concerns of all the children's parents, the impact of his decision on the student body generally—and make a judgment as to what balance to strike among them." *Id.* at 808. The present case is no different.

Here, Doe alleges that one or some of the school district defendants made the decision to show the letter's contents to the Transfer Student as part of their investigation. Doc. 22 ¶34. The school district defendants' alleged showing of Doe and his parent's name to Transfer Student is nearly identical to the principal's decision to reveal the complaining student's name to one of the bullies in *Albers*, and the school district defendants' immunity here should be no different. *Albers,* 346 Ill.App.3d at 802. *See also Hascall,* 966 N.E.2d at 1177 (granting principal and superintendent's motion to dismiss based on 2-201). "The Illinois Appellate Court has held uniformly that a school administrator's response to harassment and bullying is a discretionary, policymaking decision entitled to immunity under Section 2-201." *Brookman as next friends of A.B. v. Reed-Custer Community Unit, School District 255-U*, No. 18 C 7836, 2019 WL 4735395 *3 (N.D. Ill. 2019) (internal citations omitted). In *Brookman*, the court found that a principal, athletic director, and assistant principal were entitled to immunity under 2-201. *Id.* This logic holds the same for a school administrator's investigation into other student

concerns as well and would apply directly to Principal Dougherty, Athletic Director Walters, and Chief Title IX Officer Asbury.

Further, defendants Zimmerman and Warren—as head coach and assistant coach—also have discretionary policymaking authority as shown in the responsibilities section of the Coaches Handbook. *See* Doc. 22-20, Ex. 20, pgs. 21–22. (giving coaches the responsibility to ensure all athletes are eligible without dictating how). Both coach positions involve the exercise of discretion in how to carry out their responsibilities. *Id*. Further, both coaches alleged showing of the letter to the Transfer Student was a determination of policy and exercise of discretion within the bound of their authority. In other words, the coaches balanced competing interests when they allegedly showed the Transfer Student the letter due to their responsibility to ensure all athletes are eligible to play, and neither the Handbooks nor policies required the coaches to perform their inquiry in a prescribed manner or in obedience to the mandate of legal authority. *See Strauss*, 2022 IL 127149, ¶ 61; *Snyder*, 167 Ill.2d at 474.

Thus, the school district defendants all hold positions to either determine policy or exercise discretion in how to manage a parent's inquiry into another athlete's eligibility, and the school district defendants made both a policy determination and an act of discretion when they used their judgment to disclose the information to the accused Transfer Student. Accordingly, Count II should be dismissed with prejudice.

**B. The state law claims in Counts IV, V, and Count VI should be dismissed pursuant to Section 2-201.**

In Count IV, Doe alleges that Dougherty, Walters, Zimmerman, Warren, and Asbury were informed of eligibility questions and the retaliatory harassment and bullying against Doe and "failed to properly investigate, concealed, ignored and/or disregarded policies and procedures within its own Handbooks, and failed to take any disciplinary measures against teammates and coaches." Doc. 22 ¶¶114, 115. In Count V, Doe claims that the school district defendants failed to properly respond and protect him from retaliatory harassment, bullying, threats, and intimidation. Doc. 22 ¶¶126, 134. The individual school district defendants are immune under 2-201 as Illinois courts have repeatedly held that investigations and subsequent decisions are discretionary acts.

Illinois Appellate Courts have uniformly held that a school administrator's response to harassment and bullying is a discretionary, policymaking decision entitled to immunity under Section 2-201 of the Act. *Brookman as next friends of A.B.*, 2019 WL 4735395 *3. How the school handles and carries out its anti-bullying policy is a discretionary act that does not mandate a particular response. *See Malinksi v. Grayslake Community High School Dist. 127*, 2014 IL App (2d) 130685, ¶14, 16 N.E.3d 915, 920 (2014); *Hascall v. Williams*, 2013 IL App (4th) 121131, ¶28, 996 N.E.2d 1168, 1176 (2013); *Albers*, 346 Ill.App.3d at 808.

In *Hascall*, the plaintiff was bullied through physical harm, verbal harassment, and intimidation by other students. *Hascall*, 2013 IL App (4th) 121131, ¶¶4–7. Plaintiff's parent met with school employees who assured the parent that they would handle the situation. *Id* at ¶¶5, 9. The plaintiff then sued the school and employees for their handling of the bullying allegations. *Id.* The court found that defendants were immune

under 2-201 because while the board policy for bullying "imposes general duties," "the policy does not mandate a particular response to a specific set of circumstances" and "[t]he determination of whether bullying has occurred and the appropriate consequences and remedial action are discretionary acts under these facts." *Id.* at ¶28. Thus, the *Hascall* court found that the bullying investigation and subsequent response by defendants were discretionary policy decisions protected under the Illinois Tort Immunity Act. *Id.* at ¶¶28–29.

As in *Hascall*, the board maintains the bullying policy attached by Doe as required by the Illinois School Code. Doc. 22-21, Ex. 21; 105 ILCS 5/27-23.7(d). Further, like the board policy in *Hascall*, policy 7:180 does not require a particular response to a specific set of circumstances. *See* Doc. 22-21, Ex. 21; *Hascall*, 2013 IL App (4th) 121131, ¶28. In other words, investigative decisions and remedies for bullying allegations are discretionary policy decisions to be made by individual school district defendants.

Here, Principal Dougherty responded the same day to Doe's parent's September 25 letter reporting bullying, acknowledged the allegations, and stated that the school takes bullying allegations very seriously and will immediately begin investigating—attaching board policy 7:180. Doc. 22-8, Ex. 8, p. 6. PageID 542. The Administration requested to meet with Doe and his parent to fully understand the situation and to get individual names of students to have a thorough investigation, but this request was denied. Doc. 22-8, Ex. 8, p. 1. PageID 537. Principal Dougherty informed Doe's parent that thirteen students and seven coaches were interviewed, that supportive measures are available for Doe, that there was a team discussion on appropriate behavior, and that the school

is monitoring the locker rooms and football practice for Doe's safety. Docs. 22-11, 22-13, Exs. 11, 13. Further, Doe's parent was continually informed by Dougherty, Chief Title IX Officer Asbury, and the district's attorney on updates to the parent's bullying concerns. Docs. 22-15, 22-16, 22-17, Exs. 15-17.

Like in *Hascall*, *Malinski*, and *Albers*, Dougherty, Walters, and Asbury's choices on how to investigate the allegations and what discipline and measures were necessary are discretionary decisions protected by section 2-201 of the Act. Thus, they are immune against Doe's claims for willful and wanton concealment and failure to protect in Counts IV and V and should be dismissed with prejudice against them. Additionally, Count VI alleging intentional infliction of emotional distress against the individual school district defendants except for Asbury involves the same facts and investigations discussed in this section and thus, for the same reasons stated above, Dougherty, Zimmerman, Warren, and Walters are immune from liability and Count VI should be dismissed against them with prejudice.

**IV. Count II alleging willful and wanton release of private information should be dismissed with prejudice because the letter is not an "educational record" or a "student record."**

In Count II, Doe attempts to bring a claim against presumably the school district defendants for "willful and wanton release of private information" based on an alleged violation of FERPA and the Illinois School Student Record Act (ISSRA). To the extent such a claim exists, Doe fails to state a claim and Count II should be dismissed with prejudice. Doe contends that a September 18, 2024 letter sent by his parent to Walters and Zimmerman regarding the transfer and eligibility of another student (not Doe) is an

"education record" under FERPA and a "School Student Record" under ISSRA because it contains "personally identifiable information." Doc. 22-1, ¶ 81; *see* Doc. 22-1, Ex. 1. Further, Doe alleges that a copy of the letter was shown to the Transfer Student who was the subject of Doe's parent's accusation and infers that some privacy violation occurred in doing so. Doc. 22 ¶ 83. Assuming, for the purposes of this motion only, that the letter was shown to the Transfer Student by the school district defendants, Doe still cannot bring a claim.

**A. FERPA does not convey enforceable rights and the emailed letter is not an "educational record" under FERPA.**

The Supreme Court has been clear; FERPA does not grant any enforceable rights and FERPA's nondisclosure provisions "speak only in terms of individual policy and practice, not individual instances of disclosure." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286, 288, 122 S. Ct. 2268 (2002). "FERPA addresses systemic—not individual—violations of a student's privacy and confidentiality rights." *Jackson v. Indian Prairie SD 204*, 08 C 4312, 2009 WL 10681225, *2 (N.D. Ill. 2009); *Gonzaga Univ.*, 536 U.S. at 288. Thus, Doe has no enforceable individual right under FERPA.

Moreover, even if there is an enforceable right, the letter sent by Doe's mother regarding another student is not an "education record" under FERPA. "Education records" are "records, files, documents, and other materials which—(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4). An emailed letter does not meet this definition. Doe's parent's email fails

the definition of "educational record" because it is not a record "maintained" as the Supreme Court interprets FERPA. The Supreme Court noted that "the word 'maintain' suggests FERPA records will be kept in a filing cabinet in a records room at the school or on a permanent secure database . . . ." *Owasso Independent School Dist. No. I-011 v. Falvo*, 534 U.S. 426, 433, 122 S.Ct. 934, 939 (2002) (holding that educational records are records deliberately maintained by a school in a centralized location). The HCHS Student Handbook and its referenced Board Policy have no requirement to maintain emails. *See* Doc. 22-18, Ex. 18. Thus, Doe's parent's emailed letter is not an "educational record" necessarily "maintained" under FERPA.

**B. Doe has no standing to bring Count II.**

Doe has no standing to bring Count II because his parent's emailed letter with the subject line of "Football inquiry" is not part of his "School Student Record." Doc. 22-1, 22-2, Exs. 1-2. The emailed letter has information identifying and making allegations against Transfer Student and his parents. In the letter, Doe's parent discusses the Transfer Student's parents' alleged residences and motive to move homes as well as Transfer Student's alleged misconduct, reasons for missing practice, and a list of reasons for his claimed ineligibility. Doc. 22-1, Ex. 1. Doe's parent further asks that HCHS "confirm or deny the factual statements contained within this letter . . ." or to provide a statement confirming Transfer Student's residency. Doc. 22 Ex. 1. Doe alleges that a copy of the letter was shown to the Transfer Student by defendants without Doe's parent's consent. Doc. 22 ¶83. At no point in the letter or email did Doe's parent state that the communication was made in confidence.

Simply because the letter contained Doe's name does not transform it into a School Student Record as a matter of law. Educational institutions release documents identifying specific students all the time without violating the ISSRA. For example, schools release lists of students on the honor roll to local newspapers. Athletic teams release lists of students on sports teams. School band performances, plays and musicals contain programs identifying the names of students participating in the performance.

Assuming for purposes of this motion only, that the school district defendants disclosed the contents of the letter to the Transfer Student, a letter directly identifying the Transfer Student and his family is relevant to them because the student is central to the letter's allegations and any subsequent investigation. In order to address the allegations, Transfer Student and his family are necessary points of contact for the school district defendants to discuss the letter's contents. Doe does not have any privacy interest in a letter drafted by his parent that contains so much of Transfer Student and his parents' personally identifiable information.

At most, the letter qualifies as a "School Student Record" of the Transfer Student under ISSRA, not of Doe. 105 ILCS 10/2(d). The emailed letter is a writing that concerns Transfer Student in which he is clearly individually identified. *See* Doc. 22-1, Ex. 1. ISSRA grants rights to inspect and copy permanent and temporary school records. *See* 105 ILCS 10/5. Under ISSRA, it is the Transfer Student's family's right to view a letter that is a part of Transfer Student's school record because the letter identifies and concerns the Transfer Student. *See John K. v. Board of Educ. For School Dist. No. 65, Cook County*, 152 Ill.App.3d 543, 546, 504 N.E.2d 797, 800 (1st Dist. 1987) ("The entire scheme

of the act evinces the clear legislative intent to open student records to legitimately interested parties, particularly parents and students, so as to better protect their interest in records kept by schools regarding students, and to insure the right of those interested parties to challenge objectionable or erroneous information contained in school student records."). Therefore, the letter sent by Doe's parent necessarily cannot be private information of Doe that should be withheld from the Transfer Student's family. Accordingly, this Court should dismiss Count II with prejudice because Doe cannot state a claim for willful and wanton release of private information.

## V. Doe's breach of contract claim in Count III fails because no contract exists.

In Count III, Doe alleges that HCHS, Dougherty, Walters, Zimmerman, Warren, and Asbury alleged breached contracts—or implied contracts—found in various HCHS handbooks and the Illinois High School Association's (IHSA) Constitution and By-Laws. The HCHS handbooks are not contracts under Illinois law, and to the extent this Court finds the documents are contracts, there has been no breach. Further any breach under the IHSA's Constitution and By-Laws has been appropriately remedied and Doe lacks damages to maintain a breach of contract claim.

### A. The HCHS handbooks do not create contracts with Doe.

In the employment context, an employee handbook or other policy statement may create enforceable contract rights if the requirements for formation of a contract are present, namely, (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement must be disseminated to the employee in such a manner that the employee is

aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Duldulao v. Saint Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 490, 505 N.E.2d 314, 318 (Ill. 1987). The plaintiffs in *Mulvey v. Carl Sandburg High School*, argued that, under *Dululdao*'s analysis, the bullying prevention provisions in a high school student handbook and athletic handbook constituted legal offers that were accepted when the student enrolled and attended school and that the handbooks' contracts were subsequently breached by the school. 2016 IL App (1st) 151615, ¶31, 66 N.E.3d 507, 514–15 (2016). The *Mulvey* court rejected the argument that the handbooks contained language that made a promise or created an offer sufficient enough to support a contract. *Id.* at ¶¶ 31–33. The court noted that the student handbook provisions were "merely hortatory and convey[ed] no specific promises." *Id.* at ¶ 32.

The *Mulvey* court specifically found that phrases like "preventing students from engaging in these disruptive behaviors is *an important district goal*" and "*[i]t is the hope* of the District . . . [that] our schools will develop skills to manage their behavior effectively" failed to make any specific promises sufficient to make an offer to support contract between the parties. *Id.* at ¶¶32–33 (finding that "[t]he policies do not promise that defendants will take any particular action in any specific circumstance"). The court next rejected the argument that attending school was sufficient consideration to support a contract. *Id.* at ¶¶34–36. Thus, the *Mulvey* court ultimately held that the school handbooks did not create a contract. *Id.* at ¶39.

Like *Mulvey*, no relevant portion of the HCHS handbooks make any promise or offer sufficient to support a contract and the policies do not promise that the school district defendants will take any particular action in any specific circumstance. Doe fails to and cannot cite any specific provisions that are promises or offers. Rather, Doe makes a conclusory allegation that "[a]ll HCHS Handbooks contain various statements, pledges, promises, provisions, rules, and procedures relative to residence, eligibility, discipline, protection of privacy of students, bullying, harassment, inciting, intimidation, threats, retaliation, and FERPA protections." Doc. 22 ¶98.

HCHS's handbooks contain the same hortatory language as the handbooks in *Mulvey*. The Student Handbook states that "Hononegah *works* to create a positive school climate," that Hononegah's discipline practices are "*rooted in*" and "*aimed at* teaching expected positive behaviors," and that its "list of disciplinary measures is a range of options that will not always be applicable in every case." Doc 22-16, Ex. 16, pp. 34, 38 (emphasis added). These statements are hardly sufficient to make a contractual promise and fall far from promising "that defendants will take any particular action in any specific circumstance." *Mulvey*, 2016 IL App (1st) 151615, ¶33.

Also, like *Mulvey*, Hononegah's Board Policy 7:180 on "Prevention of and Response to Bullying, Intimidation, and Harassment" states that "Preventing students from engaging in these disruptive behaviors . . . [is an] *important District goal*[]." Doc. 22-21, Ex. 21, p. 1 (emphasis added). At most, the handbooks contain unilateral directives placed upon students. *See Mulvey*, 2016 IL App (1st) 151615, ¶36. The other handbooks are no different. *See* Doc. 22-19, Ex. 19, pp. 9–14; Doc. 22 ¶97 (quoting the Coaches

Handbook stating it was "developed for the purpose of establishing guidelines . . . [so that] athletic program personnel will enhance and foster the district's tradition of athletic excellence").

Dismissal of Count III is also appropriate because Doe fails to allege the necessary consideration required for a contract. Doe pleads that he enrolled at HCHS and was required to acknowledge and accept the Student Handbook, that the handbook states students should adhere to the District rules, policies, and procedures, and that similar acknowledgments were made for the Athletic Handbook. Doc. 22 ¶¶91–96. As the *Mulvey* court held, the requirement to attend school can hardly be a legal detriment or a disadvantage sufficient for consideration because school attendance is mandatory. *Mulvey*, 2016 IL App (1st) 151615, ¶35. Moreover, there is no bargained-for exchange or mutual agreement where the "obligations are a unilateral directive from the school district upon the students." *Id.* at ¶36. Thus, Doe lacks any consideration and the handbooks lack any promises sufficient to form a contract. Accordingly, Doe fails to state a claim for a breach of the HCHS handbooks and those claims in Count III should be dismissed with prejudice.

**B. There was no breach of the IHSA Constitution and By-Laws, and to the extent there was, Doe was not damaged.**

In Count III, Doe also alleges that the school district defendants breached the IHSA Constitution and By-Laws. Doc. 22 ¶111. Doe claims that if a request for an eligibility ruling of a student-athlete is made to IHSA there is a list of documents that must then be filed with IHSA and the IHSA Executive Director has the sole responsibility for

making an eligibility ruling. *Id.* at ¶¶105, 106. Doe pleads that HCHS breached the IHSA Constitution and By-Laws by failing to "properly and thoroughly investigate," by submitting "unverified information to the IHSA," failing to "request an eligibility hearing," and recruiting, and allowing an ineligible player to play. *Id.* at ¶111. The allegations of paragraph 111 are conclusory. Doe also claims that after his parent gave HCHS notice of a potential deficiency regarding the Transfer Student's eligibility, HCHS self-reported the issue for review by IHSA. Doc. 22 ¶¶31–33.

The constitution and by-laws of associations can create contracts between the associations and its members. *See Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill.App.3d 127, 133, 488 N.E.2d 623, 627 (1st Dist. 1986). In *Hutsonville Community Unit School District No. 1 v. Illinois High School Association*, the court found that a student athlete may be an intended third-party beneficiary in a contract between IHSA and its member school. 2021 IL App (5th) 210308 ¶17, 195 N.E.3d 798, 668–69 (2021). Unlike this case, the student in *Hutsonsville* was considered an intended third-party beneficiary because the IHSA gave promises to render certain performance under its constitution and bylaws to allow eligible students to participate in the State Series. *Id.* Here, any ruling by the IHSA as to the Transfer Student's eligibility would have no impact whatsoever on Doe's ability to remain a member of HCHS's football team. Therefore, he is not an intended beneficiary of the contract.

Even if Doe is an intended beneficiary of the IHSA Constitution and By-Laws, Doe fails to properly allege that HCHS breached the contract, and if there was a breach, Doe's claim fails because he cannot plead that he suffered any damages caused by the

alleged breach because whether the Transfer Student was or was not a member of the football team did not preclude Doe from being a member of the football team. Accordingly, Doe's claim for breach of the IHSA Constitution and By-laws should be dismissed with prejudice because he cannot state a claim where there are no damages.

## VI. Counts IV and VIII should be dismissed because Doe fails to state a claim for fraudulent concealment and willful and wanton concealment.

In Count IV Doe alleges that the individual school district defendants engaged in "willful and wanton concealment"—if such a claim exists. Doe repeatedly claims in Count IV that the individual school district defendants failed to properly investigate his parent's concerns about the Transfer Student's eligibility and alleged retaliatory harassment against him. Doc. 22 ¶¶114-116, 118, 121. Doe alleges that such conduct demonstrated "willful and wanton misconduct." Doc. 22 ¶121. Nowhere in Count IV does Doe claim that the individual school district defendants concealed any information that they owed him a duty to disclose.

The Illinois Supreme Court has acknowledged that claims of willful and wanton conduct are aggravated forms of negligence and are not independent torts from their underlying causes of action. *Krywin v. Chicago Transit Authority*, 238 Ill.2d 215, 235, 938 N.E.2d 440, 452 (2010); *Ziarko v. Soo Line Railroad*, 161 Ill.2d 267, 274, 641 N.E.2d 402, 406 (1994) (stating that there is no separate and independent tort of willful and wanton misconduct). To the extent that Doe attempts to plead a willful and wanton form of fraudulent concealment, this claim fails because Doe cannot state a claim for the underlying tort of fraudulent concealment. *Id.* In terms of Doe's allegations of a delayed

investigation of his claims, the exhibits attached to the first amended complaint on their face disprove his allegations. *See* Docs. 22-8, 22-11, 22-13, 22-15, 22-16, 22-17; Exs. 8, 11, 13, 15-17. As a result, Count IV should be dismissed with prejudice.

In Count VIII, Doe attempts to bring a claim of fraudulent concealment against all defendants. Doe makes conclusory allegations that defendants Brian and Nicole Kelly's permanent residence is in Wisconsin and they have a temporary residence within the HCHS school district and used this address in paperwork submitted by the school district defendants to the IHSA in order to allow Transfer Student to play on the football team. Doc. 22 ¶¶158-161, 167. Doe alleges that defendants concealed the Kellys' permanent residence to HCHS administrative defendants and to IHSA. *Id.* at ¶¶162, 166, 168.

To state a claim of fraudulent concealment, Doe must plausibly allege that: "(1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Abazari v. Rosalind Franklin University of Medicine and Science*, 2015 IL App (2d) 140952, ¶ 27, 40 N.E.3d 264, 274 (2015). Notably, Rule 9(b)'s particularity requirement applies to claims of fraudulent concealment. FRCP

Rule 9(b); *Squires-Cannon v. Forest Preserve District of Cook County*, 897 F.3d 797, 805 (7th Cir. 2018).

Dismissal of Count VIII is appropriate because Doe has not plausibly pled facts demonstrating that there existed a concealed material fact that defendants were under a duty to disclose to him. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 500, 675 N.E.2d 584, 593 (1996). Doe further fails to plead that he lacked knowledge of the information that was allegedly fraudulently concealed by defendants to the IHSA and justifiably relied on it. In fact, Doe pleads the opposite.

Doe has not plead that there is a special or fiduciary relationship which would raise a duty to speak. *See Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill.App.3d 154, 161–62, 510 N.E.2d 409, 413 (1st Dist. 1986). Rather, Doe implicitly acknowledges that there was no duty for defendants to disclose a transfer student's information to him through alleging that all fraudulent concealment occurred between the defendants, HCHS administration, and IHSA. Doc. 22 ¶¶114, 162, 166, 168. Doe further acknowledges that the guidelines regarding transfer student documentation are effective between IHSA and HCHS stating "Pursuant to IHSA rules, Dougherty is required to ensure that only eligible students represent the school in interscholastic competitions" and "Dougherty failed to request an eligibility ruling with the IHSA for the Transfer Student . . . ." Doc. 22 ¶¶163, 169. If any duty is owed at all, it is between HCHS and IHSA—not Doe. Therefore, Doe cannot state a claim for fraudulent concealment because there was no duty of disclosure owed to him.

To the extent any duty may exist, Doe fails to state a claim because he alleges that he had knowledge of any alleged fraudulent concealment—so no concealment could have possible occurred between Doe and HCHS. Doe explicitly alleges that he and his parent had knowledge of any alleged concealment and that they themselves "placed [defendants] on notice" of the concealed information. Doc. 22 ¶¶23, 29, 54, 164; Docs. 22-1, 22-12; Exs. 1, 12. Thus, Doe could not have possibly justifiably relied on any alleged concealment by defendants; nor could he be damaged by any reliance as the alleged information was not concealed to Doe at all. *See* Doc. 22 ¶23, 29, 54, 164; Ex. 1, 12. *See Cnty. Bd. of Sch. Trustees of DuPage Cnty. v. Ass'n of Franciscan Fathers*, 49 Ill.App.3d 686, 696, 364 N.E.2d 691, 699–700 (2d Dist. 1977)(fraudulent concealment cannot exist when the plaintiff, who claimed to be affected by the fraud, could have discovered it). To the extent Doe argues that the school district defendants concealed facts from the IHSA, Doe cannot state a claim for the alleged concealment of facts from another. Accordingly, Doe's claim for fraudulent concealment against all defendants should be dismissed with prejudice.

**VII. Count V alleging willful and wanton failure to protect should be dismissed with prejudice because the individual school district defendants owed no duty to Doe and Doe fails to plead willful and wanton conduct.**

In Count V, Doe attempts to bring a claim for willful and wanton failure to protect against Dougherty, Walters, Zimmerman, Warren, and Asbury. Even if this Court finds that defendants are not immune under the Illinois Tort Immunity Act, dismissal is warranted because defendants owed no duty to Doe, and Doe fails to plead willful and wanton conduct. Doe claims that the individual school district defendants took no

action to prevent the release of his identity and that of his parent which allegedly caused an unsafe and hostile team environment. Doc. 22 ¶¶126, 129.

Doe includes allegations in Count V about a school t-shirt design and a student newspaper club's article talking positively of the Transfer Student's football performance—both of which fall far from showing willful and wanton conduct. Doc. 22 ¶131, 132, Docs. 22-30, 22-31; Exs. 30, 31. Doe further discusses the team's hostile environment and retaliation and alleges a failure to implement safety measures while also attaching multiple letters and emails from defendants as exhibits that discuss the steps defendants took to investigate, remedy, and protect Doe in response to Doe's parent's concerns. Doc. 22 ¶¶128–130; Docs. 22-8, 22-11, 22-13, 22-15, 22-16, 22-17; Exs. 8, 11, 13, 15-17. Doe's allegations, in combination with the attached exhibits, fail to show that the individual school district defendants had a deliberate intention to harm or a conscious disregard for his welfare.

While Illinois courts have recognized that some relationships between public school districts and their students create a duty to protect, this only arises under certain circumstances where special relationships exist that are not present here. *See Lawson v. City of Chicago*, 278 Ill.App.3d 628, 662 N.E.2d 1377, 1389 (1st Dist. 1996). Doe has not plead any special relationship with respect to each of the individual defendants that would give rise to each of them owing him a duty.

Doe also fails to plausibly state a claim for willful and wanton conduct. To sufficiently plead willful and wanton misconduct, Doe must allege the individual school district defendants either had a deliberate intention to harm or an utter

indifference to or conscious disregard for his welfare. *See Purevdori v. Mission Hills Condo. T-2 Assn.*, 2024 IL App (1st) 231693, ¶47 (2024). Simply calling certain acts "willful and wanton" is not sufficient and the facts alleged in the complaint must manifest such a finding. *Id.* Willful and wanton misconduct "goes far beyond mere inadvertence, which may constitute ordinary negligence, because it requires a conscious disregard for the safety of others." *Oravek v. Cmty. Sch. Dist. 146*, 264 Ill.App. 3d 895, 899, 637 N.E.2d 554, N.E.2d 557 (1st Dist. 1994). The facts alleged by Doe fail to show that any of the individual school district defendants consciously disregarded his safety and the exhibits attached to his first amended complaint demonstrate the opposite. Thus, Doe fails to state a claim for willful and wanton failure to protect. Accordingly, this Court should dismiss Count V without prejudice for failure to state a claim.

**VIII. Count VI alleging intentional infliction of emotional distress (IIED) should be dismissed because Doe cannot show any defendant's conduct was extreme and outrageous.**

In Count VI, Doe attempts to bring a claim for IIED against Dougherty, Zimmerman, Warren, and Walters. To state a claim for IIED, Doe must plausibly allege that (1) the conduct involved was extreme and outrageous; (2) the defendant either intended that the conduct inflict severe emotional distress or know that there is a high probability that his conduct will cause severe emotional distress; and (3) the conduct must cause severe emotional distress. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 533 N.E.2d 806, 809 (1988). Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized community." *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶51, 77 N.E.3d 50, 63 (2016) (citing Restatement (Second) of Torts § 46 cmt. d, at 73 (1965)). Mere insults, indignities, threats, or annoyances do not qualify as extreme and outrageous conduct. *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 20–21, 607 N.E.2d 201 (1992). In determining if conduct is extreme and outrageous, courts consider "(1) the amount of power or control the defendant has over the plaintiff; (2) whether the defendant reasonably believed its objective was legitimate; and (3) whether the defendant knew the plaintiff was particularly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Merkel v. Galva CUSD 224*, 4:23-cv-04130-SLD-JEH, 2024 WL 4339594, *6 (C.D. Ill. 2024). Here, Doe fails to plead conduct that is extreme and outrageous under Illinois law.

Doe alleges that Zimmerman, Warren, and or members of the HCHS coaching team leaked Doe and his parent's identity to the Transfer Student and demoted Doe on the football team, minimizing his playing time. Doc. 22 ¶¶138–39. Dougherty and Walters were informed of Doe's concerns and investigated the allegations. Doc. 22 ¶140. The investigation was completed after interviewing thirteen students and seven coaches. Doc. 22-13, Ex. 13. While no students were found to have engaged in the alleged conduct, HCHS put supportive measures in place and continued to monitor the situation. *Id.*

Following the investigation, Doe alleges that he continued to be bullied and harassed by Zimmerman, Warren, and football teammates. Doc. 22 ¶140. The school investigated the allegation of continued misconduct and investigated another complaint

involving Doe's relative. Doc. 22 ¶140. Doe alleges that Dougherty, Walters, Zimmerman, and Warren coordinated retaliation that caused him severe emotional distress "by ignoring the allegations made by JOHN DOE's parent, continuing to keep the Transfer Student in the starting position on the team, praising the Transfer Student as a star member of the team, and derailing JOHN DOE's bullying and retaliation accusations." Doc. 22 ¶¶142, 144. Doe's allegations of defendants' conduct fall far from conduct that is "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Schweihs*, 2016 IL 120041, ¶51. The case law shows the same.

In *Merkel v. Galva CUSD 224*, a disabled student alleged that the defendants caused her emotional distress through "(1) teacher-on-student verbal abuse; (2) refusing to stop and actually encouraging teacher-on-student harassment; and (3) refusing to stop such harassment after receiving notice of these incidents and a request to intervene." 2024 WL 4339594, *5. The court dismissed plaintiffs IIED claim because the high bar of extreme and outrageous conduct was not met—regardless of the plaintiff's disability and the power imbalance between her and the defendants. *Id.* at *7. Similarly, in *Nardella v. Leyden High School District 212*, the court found that a disabled student failed to state an IIED claim when he alleged that district employees consistently humiliated him in a punitive manner in front of others and that administrators were aware of the conduct and took no action to prevent it. No. 15-cv-4885, 2016 WL 3418571, *3 (N.D. Ill. 2016); *see also Douglas v. Lofton*, No. 12 C 8592, 2013 WL 2156053, *10 (N.D. Ill. 2013)

(listing numerous cases where IIED claims failed to allege extreme and outrageous conduct).

Here, Doe alleges no conduct by these defendants that rises to the level of extreme and outrageous under Illinois law. Doe's allegations that the coaches encouraged and refused to stop the bullying and harassment are akin to the allegations in *Merkel*. *See* 2024 WL 4339594, *5. The allegations that defendants were aware of the conduct and did not stop it is similar to the allegations in *Nardella*. *See* 2016 WL 3418571, *3. Like *Merkel* and *Nardella*, these allegations fall short of the necessary extreme and outrageous conduct required to plead an IIED claim. Further, even in the most charitable light, Doe's allegations that the Transfer Student was praised and remained in the starting position on the team fall far from extreme and outrageous conduct. Accordingly, Doe's IIED claim in Count VI should be dismissed without prejudice.

**IX. Count VIII (repeated) should be dismissed with prejudice because there is no private right of action under the Illinois School Code.**

In Count VIII (repeated), Doe attempts to bring a claim under the Illinois School Code against all defendants. Doc. 22 PageIDs 516-19. Doe's claim should be dismissed with prejudice because the Illinois School Code does not provide a private right of action. The statute does not authorize parties to bring civil lawsuits for violations of the code. *See* 105 ILCS 5/10-20.12b; *see generally* 105 ILCS 5/. Numerous courts have "rejected attempts to create an implied private right of action under the School Code." *Collins v. Board of Educ. of North Chicago Community Unit School Dist. 187*, No. 10–cv–

03329, 792 F.Supp.2d 992, 1000 (N.D. Ill. 2011) (internal citations omitted). This Court should hold the same.

In Illinois, a private right of action may be implied where: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Fisher v. Lexington Health Care, Inc.*, 188 Ill.2d 455, 460, 722 N.E.2d 1115, 1117–18 (1999). Doe's allegations under the Illinois School Code do not satisfy this test. Doe's attempt to weaponize the Code by suing other parents and school administrators would be an unprecedented and perverse use of the statute.

Doe's alleged injuries of losing a starting position, practice, and playing time on a football team, loss of college prospects, and experiencing emotional distress and mental anguish are not the type of harms that the Illinois School Code was designed to prevent. Rather, the School Code's purpose is to uniformly control all necessary aspects of public schools in the state. Accordingly, Doe's claim in Count VIII (second) under the Illinois School Code should be dismissed with prejudice.

**X. Doe's civil conspiracy claim in Count IX and aiding and abetting claim in Count X should be dismissed for failing to state a cause of action.**

In Count IX, Doe attempts to state a claim against all defendants for civil conspiracy. In Count X, Doe attempts to state a claim against all defendants for aiding and abetting. Civil conspiracy and aiding and abetting are derivative claims. Without an underlying

tort, claims for civil conspiracy and aiding and abetting fail. *Squires Cannon*, 897 F.3d at 806. In Count IX, Doe pleads that defendants conspired to conceal Transfer Student's residency. Doc. 22 ¶¶189, 192. As argued in Section VI, *supra*, Doe fails to state a claim for fraudulent concealment and willful and wanton concealment in Counts IV and XIII or defendants are immune from the same. Therefore, Doe's civil conspiracy claim necessarily fails as there is no underlying tortious conduct.

Doe cannot state a claim for aiding and abetting because Doe's claim of residency fraud against Brian and Nicole Kelly is not actionable. Doe claims that defendants aided and abetted the Kellys in committing residency fraud. Doc. 22 ¶204. Doe alleges that the Kellys committed residency fraud through violations of the Illinois School Code Section ILCS 5/10-20.12b. Doc. 22 ¶¶147, 149, 156, 181, 185. However, as explained in Section IX, *supra,* courts are unanimous in holding that there is no private right of action for violations of the Illinois School Code. Therefore, Doe's aiding and abetting claim fails because the claim "is a theory for holding the person who aids and abets liable for the tort itself" and, here, there is no actionable tort for violations of the Illinois School Code. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *see Collins*, 792 F.Supp.2d at 1000. Accordingly, the civil conspiracy and aiding and abetting claims should be dismissed without prejudice.

**XI. Doe's prayer for relief in certain counts is unavailable as a matter of law.**

In Counts VIII, VIII (repeated), IX, and X, Doe prays for punitive damages against the HCHS School Board. The School Board is immune from all punitive damages levied against it by Doe and these requests for damages should be stricken. Under Illinois Tort

Immunity Act, a local public entity is not liable to pay punitive or exemplary damages. *See* 745 ILCS 10/2-213. A school board is explicitly defined as a "local public entity." 745 ILCS 10/1-206. Thus, Doe cannot seek punitive damages from the HCHS school board.

In Count III, Doe claims breach of contract and seeks punitive damages. "[P]unitive damages are generally not available under a contract theory." *Cirrincione v. Johnson*, 184 Ill.2d 109, 114, 703 N.E.2d 67, 70 (1998). Further, in Doe's state law claims, which are in all Counts except Count I, Doe prays for his attorney's fees. "Illinois generally follows the 'American Rule': absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorney fees and costs, and may not recover those fees and costs from an adversary." *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill. 2d 560, 572, 739 N.E.2d 1263, 1271 (2000). Doe cites no statutory or contractual agreement permitting him to seek attorney fees for his state law claims and such prayer for relief should be stricken.

WHEREFORE, for all the reasons set forth above, the school district defendants pray that this Court dismiss Doe's First Amended Complaint and grant all other relief requested in this motion.

Respectfully submitted,

**HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207, HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207 BOARD OF EDUCATION, CHAD DOUGHERTY, BRIAN ZIMMERMAN, JEREMY WARREN, ANDREW WALTERS, KENDRA ASBURY**

By: *s/Julie A. Bruch*

Julie A. Bruch, #6215813
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Phone: 847/291-0200
Fax: 708/621-5538
Email: jbruch@ifmklaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) Case No. 24-cv-50423 |
| | ) |
| HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207, et. al., | ) The Honorable Iain D. Johnston<br>) Magistrate Judge Margaret J. Schneider |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2025, I electronically filed ***Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Supporting Memorandum*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following registered participant(s):

Kelly A. Vecchio
One Court Place, Suite 101
Rockford, IL 61101
kelly@vecchiolawoffices.com

and via USPS to:

Brian Kelly and Nicole Kelly
12015 Bend River Road
Roscoe, IL 61073

**HONONEGAH COMMUNITY HIGH SCHOOL DISTRICT #207, HONONEGAH COMMUNITY SCHOOL DISTRICT #207 BOARD OF EDUCATION, CHAD DOUGHERTY, BRIAN ZIMMERMAN, JEREMY WARREN, ANDREW WALTERS, KENDRA ASBURY**

By: *s/Julie A. Bruch*

Julie A. Bruch, #6215813
Lance A. Neyland #633171
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Phone: 847/291-0200
Fax: 708/621-5538
Email: jbruch@ifmklaw.com