N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS CASTELLI,<br>Plaintiff, | ) ) ) | |
| Vs. | ) ) ) | Case No.    24-cv-50423 |
| HONONEGAH COMMUNITY HIGH<br>SCHOOL DISTRICT #207,<br>a body politic, HONONEGAH<br>COMMUNITY SCHOOL BOARD OF<br>EDUCATION, a body politic, CHAD<br>DOUGHERTY,<br>in his official and individual capacity,<br>BRIAN ZIMMERMAN, in his official and<br>individual capacity, JEREMY WARREN,<br>in his official and individual capacity,<br>ANDREW WALTERS, in his official and<br>individual capacity, KENDRA<br>ASBURY, in her official and individual<br>capacity, BRIAN KELLY, in his individual<br>capacity, and NICOLE KELLY, in her<br>individual capacity,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED**<br><br><br><br><br><br>The Honorable Iain D. Johnston<br>Magistrate Judge Margaret J. Schneider |

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, THOMAS CASTELLI, by and through his attorneys,

VECCHIO LAW OFFICES, and brings the following Complaint at Law against the

Defendants named herein, and in support thereof asserts as follows, that:

## STATEMENT OF THE NATURE OF THE CASE

1. Plaintiff, THOMAS CASTELLI, is a Hononegah Community High School

    ("HCHS") student and former football player for the 2024-2025 school year.

    Since his Freshman year, Plaintiff has been a member of this successful football

    team and a model HCHS student, until his parent reported recruitment,

residence, and eligibility issues involving another member of the team. In doing so, the wrath of the coaches and fellow teammates was placed upon Plaintiff, who they believed jeopardized the entire team and season after the IHSA required the school to forfeit a game, disqualified a teammate from a game, and placed the school on probation. Plaintiff faced extreme and severe harassment, threats, intimidation, and repeated bullying and retaliation. This reaction revealed the lack of protections that exist in HCHS. He went from being the first-in-play backup quarterback to being shunned and demoted on the team. All of the aforementioned claims were reported to HCHS who – in an effort to protect the popularity and ability of the team to continue – did nothing to investigate Plaintiff's claims or to protect Plaintiff, and ratified the methodical and vindictive plan of retaliation known and endorsed by HCHS. The failure by the administrators and coaches of HCHS to support Plaintiff and protect his identity after his parent's report of residence and eligibility issues led Plaintiff to experiencing significant harassment and isolation from his former teammates on the football team. He also lost significant exposure for opportunities to play football at the collegiate level due to the HCHS coaches isolating, demoting, and benching him, and not advocating to colleges for him. Plaintiff was effectively forced off the team by the coaches and teammates and did not finish the season due to the severity of bullying and retaliation. Plaintiff lost many friends on the team during his worst time. This case is now brought to seek redress for retaliation and other violations of Federal and State law against Plaintiff for his parent's reporting of violations of Illinois law and the Illinois High School

Association's ("IHSA) by-laws by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction is proper under 29 U.S.C. § 1331, which provides federal courts with jurisdiction over all claims arising out of the Constitution, treaties, and laws of the United States.

3. Jurisdiction over the Plaintiff's state law claims is proper under 28 U.S.C. § 1367 as they arise out of the same set of facts and circumstances as Plaintiff's federal law claims.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) as all events giving rise to the Plaintiff's claim occurred in this judicial district.

## PARTIES

5. Plaintiff, THOMAS CASTELLI, is a student of HCHS and former football player for the HCHS Boys' Varsity Football Team. Plaintiff has turned eighteen (18) years old; however, during many of the events giving rise to his claims, he was a minor.

6. Plaintiff is an Illinois citizen, resides in Winnebago County, Illinois, and is a student at HCHS.

7. Defendant School, HCHS, is an Illinois public high school located at 307 Salem Street, Rockton, IL 61072, which is the employer of multiple administrators and coaches involved in this matter.

8. Defendant, HONONEGAH COMMUNITY SCHOOL BOARD OF EDUCATION (hereinafter "HCHS School Board") was and is a school board comprised of seven (7) elected members located in the County of Winnebago, and governed

by the laws of the State of Illinois.

9. Defendant Chad Dougherty ("Dougherty") is being sued in his individual and official capacity for his actions as principal of HCHS, for intentional infliction of emotional distress, for willful and wanton misconduct relating to his deliberate and intentional indifference to the harassment and bullying of, and retaliation against Plaintiff, for concealment of information and failure to report eligibility and residence issues to IHSA, for breach of contract, for failure to supervise and/or discipline school staff, the football coaches, and certain members of the football team, and for failure to protect Plaintiff.  Dougherty is a resident of Rockford, Illinois.

10. Defendant Brian Zimmerman ("Zimmerman") is the head football coach of the HCHS Boys' Varsity Football Team, and is being sued in his individual and official capacity for intentional infliction of emotional distress, for willful and wanton misconduct related to his deliberate and intentional indifference to the harassment and bullying of Plaintiff, for facilitating and encouraging harassment and retaliation against Plaintiff, for release of Plaintiff's private information in violation of the Federal Educational Rights and Privacy Act ("FERPA") and the Illinois School Student Records Act, for breach of contract, for the concealment of information and failure to report residence and eligibility issues, for failure to supervise and discipline certain members of the football team, and for failure to protect Plaintiff.  Zimmerman is a resident of Rockford, Illinois.

11. Defendant Jeremy Warren ("Warren") is an assistant quarterback coach of the HCHS Boys' Varsity Football Team, and is being sued in his individual and

official capacity for intentional infliction of emotional distress, for willful and wanton misconduct related to his deliberate and intentional indifference to the harassment and bullying of Plaintiff, for facilitating and encouraging harassment and retaliation against Plaintiff, for breach of contract, for the concealment of information and failure to report residence and eligibility issues, for failure to supervise and discipline certain members of the football team, and for failure to protect Plaintiff. Warren is a resident of Roscoe, Illinois.

12. Defendant Andrew Walters ("Walters") is the athletic director for HCHS, and is being sued in his individual and official capacity for intentional infliction of emotional distress, for willful and wanton misconduct related to his deliberate and intentional indifference to the harassment and bullying of Plaintiff, for facilitating and encouraging harassment and retaliation against Plaintiff, for breach of contract, for release of Plaintiff's private information in violation of FERPA and the Illinois School Student Records Act, for the concealment of information and failure to report residence and eligibility issues to the IHSA, for failure to protect Plaintiff, and for failure to supervise and discipline the football coaches and certain members of the football team. Walters is a resident of Illinois.

13. Defendant Kendra Asbury ("Asbury") is being sued in her individual and official capacity for her actions as the Chief Title IX Officer for HCHS for intentional infliction of emotional distress, for willful and wanton misconduct, for failure to properly carry out and/or supervise the investigations of harassment, bullying, intimidations, threats, and retaliation against Plaintiff, and for failure to protect Plaintiff. Asbury is a resident of Illinois.

14. Defendant Brian Kelly is being sued in his individual capacity for his actions involving fraud, fraudulent concealment, civil conspiracy, and breaches of contracts. Brian Kelly is the father of the "Transfer Student" cited herein. Brian Kelly is a resident of the State of Wisconsin.

15. Defendant Nicole Kelly is being sued in her individual capacity for her actions involving fraud, fraudulent concealment, civil conspiracy, and breaches of contracts. Nicole Kelly is the mother of the "Transfer Student" cited herein. Nicole Kelly is a resident of the State of Wisconsin.

## FACTS

16. For the 2024-2025 school year, the HCHS Boys' Varsity Football team ("the football team") is considered an elite team within the NIC-10 Conference, ranked within the top three (3) high schools in the conference for their winning record. Plaintiff was an important part of the team, as he was, and historically has been, the first-in-play backup quarterback since his Freshman year.

<u>Residence and Eligibility issues</u>

17. A starting team member for HCHS for the 2024-2025 Varsity football season is a recent transfer student ("Transfer Student") from Wisconsin, having transferred to HCHS following the 2023-2024 football season.

18. Brian Kelly and Nicole Kelly (collectively "the Kellys") sold their residence in the Roscoe/Rockton area in 2021 and relocated to Lake Mills, Wisconsin. Both are employed in and maintain their permanent residence in Lake Mills, Wisconsin. The Kellys do not own any real estate property within the State of Illinois; do not pay real estate taxes in Illinois; and upon information and belief, do not pay

tuition to HCHS for their son's attendance at HCHS. The Transfer Student's vehicle displays out of state license plates and is registered with the school to park in the school parking lot.

19. Brian Kelly created and coached youth football teams in the Roscoe/Rockton area prior to his relocation out of state with his family in 2021. An assistant coach(es) of the HCHS Varsity Football team served as an assistant coach on Brian Kelly's football team(s). Brian Kelly was a coach on his son's high school football team in Wisconsin, until his son's transfer to HCHS in 2023. Brian Kelly maintains relationships with certain coaches at HCHS.

<u>Illegal Recruitment</u>

20. On or about November of 2023, Zimmerman, Warren, and/or other HCHS assistant coaches under Zimmerman, illegally recruited the Transfer Student to play for the HCHS Boys' Varsity Football team for the 2024-2025 season. As a result, on or about November of 2023, Brian Kelly rented or otherwise secured temporary housing within the HCHS school district where he and the Transfer Student have periodically stayed for the sole purpose of the Transfer Student attending free school in the HCHS district and playing sports therein.

21. Upon information and belief, Nicole Kelly continues to reside in Wisconsin in at the family's primary residence following the Transfer Student's transfer to HCHS.

22. During the 2024 HCHS summer football scrimmage at Beloit College, Plaintiff's parents were seated near Brian Kelly and overhead him discussing his reasons for the transfer of schools for his son, which included discussions he had with a HCHS football coach(es) who was looking for student for a starting position in the

2024-2025 football season, and the coach's desire to have the Transfer Student transfer to HCHS for that purpose.

<u>2024-2025 Football Season</u>

23. On June 23, 2024, the Transfer Student sent a message via Snapchat to Plaintiff in which he congratulated Plaintiff for obtaining the starting position on the team. The Transfer Student stated that he may have cancer in his knee, which was his alleged reason for his inability to play in the starting position.

24. Shortly thereafter, Plaintiff received information that the Transfer Student attended an underage party where alcohol was present, and that pictures of the Transfer Student and other HCHS football team members were circulated to HCHS football coaches and/or teammates by a rival high school. Upon information and belief, the Transfer Student sent the foregoing Snapchat message to Plaintiff after being caught at the party.

25. On June 27, 2024, Zimmerman had a discussion with the HCHS football team after practice regarding pictures and/or information he had received about certain members of the football team at a party which involved alcohol. The named Defendants in this action did not investigate the matter, internally concealed the information, and no disciplinary measures or suspensions were issued against any HCHS football team members.

26. On August 8, 2024, the Transfer Student invited certain members of the football team, including Plaintiff, to his parents' home in Wisconsin for a post-practice cookout.

27. Shortly before the start of the 2024-2025 football season, the Transfer Student

was, in fact, chosen by the HCHS football coaches for a starting position on the team for the season, with no prior experience in that position.

<u>Report of the Residence and Eligibility issues and IHSA Sanctions</u>

28. On September 18, 2024, Plaintiff's parent sent a letter to Walters, with a copy to Zimmerman, regarding the residence issues pertaining to the Transfer Student's attendance at HCHS and his eligibility and participation on the school football team. A copy of the letter is attached hereto and labeled **Exhibit 1.**

29. Within 15 minutes of the email and letter being sent, Zimmerman responded to Plaintiff's parent to state that he was "saddened" and "sorry" that Plaintiff's parent felt the need to approach "the situation" in this matter. In this communication, Zimmerman failed to respond to any of the statements regarding the transfer, residence, and eligibility of the Transfer Student. See attached email from Zimmerman labeled **Exhibit 2.**

30. On September 18, 2024, the same day the letter was sent by Plaintiff's parent to the school, Defendants found it necessary to self-report a "paperwork" issue regarding the transfer and eligibility of the Transfer Student to the IHSA.

31. Based upon information sent by HCHS to IHSA, IHSA made the following determinations: 1) the Transfer Student was, in fact, ineligible to play for the upcoming game on September 20, 2024, and would remain ineligible until the proper paperwork was filed, 2) HCHS football team had to forfeit 1 of 3 games in which the Transfer Student played, and 3) HCHS was placed on probation.

32. The IHSA was awaiting an executed copy of the Affidavit of Residence from HCHS regarding the Transfer Student. A copy of the Affidavit of Residence form

is attached hereto and labeled **Exhibit 3.**

<u>FERPA Violation, Bullying, Threats, Intimidation, and Retaliation</u>

33. On or about September 20, 2024, a copy of the letter sent by Plaintiff's parent was shown by one or some of Defendants to the Transfer Student. The Transfer Student immediately called numerous other football teammates and blamed Plaintiff for his inability to play in the upcoming game on September 20, 2024.

34. That weekend, on September 22, 2024, Plaintiff's parent received an email and text message from Nicole Kelly requesting production of the letter sent to the school. A copy of the email and text message sent by Nicole Kelly are attached hereto and labeled **Exhibit 4.**

35. On September 23, 2024, Plaintiff's parent received a letter from HCHS regarding a "September 18, 2024 FOIA Request," wherein HCHS denied production of any information regarding the transfer and eligibility of the Transfer Student. Defendant(s) viewed the letter as a request for student records of the Transfer Student within the meaning of the Illinois Student Records Act. See attached HCHS letter dated September 23, 2024 labeled **Exhibit 5.**

36. Plaintiff's parent did not send a FOIA request to HCHS and was not seeking private information of the Transfer Student; rather, the school considered the September 18, 2024 letter a FOIA request.

37. On September 24, 2024, following football practice, Zimmerman announced to the team that it has suffered a forfeit of a game due to a "paperwork" issue with IHSA. By that time, the football team was aware of Plaintiff's parent's involvement with the issue.

38. Thereafter, Plaintiff received and suffered from severe and extreme bullying, threats, intimidation, and retaliation by the Transfer Student, other teammates, and HCHS coaches.

39. On September 25, 2024, Plaintiff's parent sent a second letter to Dougherty, Zimmerman, Walters, HCHS Superintendent Michael Dugan, and HCHS School Board President David Kurlinkus, to serve as notice to the school of severe bullying and retaliation against Plaintiff by football teammates and coaches following disclosure of Plaintiff's parent's report to the school, along with a request for an update on residence and eligibility issues. The school was also notified that Plaintiff would not attend football practice due to the following: 1) the severity of threats of harm against Plaintiff, his family, and his girlfriend; 2) FERPA violations; 3) disregard of the residence and eligibility issues for the Transfer Student by Defendants; and 4) the delay in the investigation into the retaliation against Plaintiff. A copy of the letter dated September 25, 2024 is attached hereto and labeled **Exhibit 6.**

40. That same day, Zimmerman sent a text message through the application known as "Hudl" to the HCHS football team members wherein he downplayed and minimized the allegations of bullying, harassment, threats, and intimidation involving Plaintiff, and stated, "Also, if anyone is asking today, please remember that you have no comment about the situation. It is done. Flush it and use it for the next 5 Friday nights! Go Indians!" A copy of the message is attached hereto and labeled **Exhibit 7.**

41. Following notice from Plaintiff's parent of the bullying, threats, intimidation, and

retaliation against Plaintiff, no warnings or instructions were given to the HCHS football team members or coaches by Defendants, and no investigation was conducted by HCHS into the issue of retaliation by the coaches.

42. Defendants condoned the retaliation and harassment and allowed it to continue, thereby leaving Plaintiff to be victimized and traumatized further following his parent's reports to the school.

43. Thereafter, the bullying and harassment against Plaintiff by his teammates escalated. Plaintiff was immediately removed from the football group team chat and discussions were held by the Transfer Student and teammates for a "F T" movement against Plaintiff, which involved setting him up at practice to get hurt, holding up "F T" signs in the student section at the football games, raping his parent and girlfriend, lynching his parent, planting drugs in his backpack at school, and knocking off his helmet during practice. Following disclosure of the forfeit by the coaches, one teammate was throwing mud on Plaintiff during football practice on the sidelines.

44. Following these reports of bullying, harassment, intimidation and threats of harm against Plaintiff, Zimmerman and/or Warren significantly reduced Plaintiff's practice time with the team and playing time on the field during games. For the September 20, 2024 game in which Transfer Student was ineligible to play, Plaintiff was demoted to a third-string position on the team; and for Plaintiff's last game with the team, he was put in play in his demoted position for the last 6.8 seconds of the game. During that game, Zimmerman told Plaintiff, "If you don't want to be here, just walk away."

45. All incidents were reported to HCHS by Plaintiff's parent, some of which were caused and/or initiated by the Transfer Student and Coach Zimmerman; however, no safety precautions were taken for Plaintiff, and no warnings, instructions, sanctions, suspensions, or other disciplinary measures were issued by the HCHS administration against the coaches, Transfer Student, or any other HCHS football team members.

46. The following day, on September 26, 2024, Plaintiff's parent received an email from Dougherty regarding the initiation of a bullying investigation, Title IX investigation regarding PLAINTIFF'S girlfriend, and a second letter from HCHS regarding a "FOIA" follow-up response and denial of requested information. A copy of the email and letter is attached hereto and labeled **Exhibit 8.**

47. On that same date, Plaintiff's parent sent a third (response) letter to HCHS Administration, Coaches, Superintendent, and School Board President with a request to confirm or deny the allegations of the residence and eligibility matters contained in the September 18, 2024 letter. A copy of the letter is attached hereto and labeled **Exhibit 9.** No response was received.

48. On September 27, 2024, Plaintiff's parent sent a fourth letter to Dougherty, Walters and Asbury regarding additional information for the bullying, retaliation, threats, and other Title IX investigations, and as follow-up on the residence and eligibility matters. A copy of the letter is attached hereto and labeled **Exhibit 10.** No response was received.

49. On September 27, 2024, the IHSA received the Affidavit of Residence from HCHS and Transfer Student was allowed to play in the football game that

evening by Defendants.

50. Upon information and belief, the Transfer Student's parents submitted false or misleading Affidavit of Residence regarding their permanent residence to the school, which was accepted, adopted, and submitted by Defendants to IHSA, without investigation. Since that time, the Transfer Student played in every football contest in the starting position for the rest of the season.

51. Dougherty did not contact IHSA for an eligibility ruling for the Transfer Student. Dougherty unilaterally determined that the Transfer Student was a resident of the school district and eligible to play on the football team for the rest of the season.

52. On September 27, 2024, Zimmerman's wife was taking pictures of Plaintiff's parents and family at a restaurant following news of the forfeiture of the HCHS game. Dougherty, Walters, and Zimmerman were notified of the issue by Plaintiff's parent in an email dated September 30, 2024, and no response was received from them on that issue. See attached email communication dated September 30, 2024 labeled **Exhibit 11.**

53. On October 2, 2024, Plaintiff's parent sent a fifth, more detailed, letter to Defendants - this time addressed to Dougherty, Walters, and the HCHS registration staff member, with a copy sent to IHSA Executive Director, Asbury, Superintendent Dugan, and School Board President Kurlinkus - as a formal request for an investigation into the residence and eligibility issues regarding the Transfer Student and his family. This letter included the following: 1) details and proof regarding the permanent residence and eligibility issues pertaining to the Transfer Student and the Kellys, 2) specific duties and obligations of HCHS to

provide accurate and verified information to the IHSA for player eligibility, 3) copies of all applicable rules from HCHS Handbooks and IHSA by-laws, and 4) possible violations of the Illinois School Code by the Kellys.  See attached letter dated October 2, 2024 (without attachments) labeled **Exhibit 12.**

54. Only after that, on October 2, 2024, did Dougherty send a report regarding the outcome of the investigation into bullying, in which he found no corroborating evidence of the claims and no further action was taken against any football team members.  A copy of that email is attached as **Exhibit 13.**

55. At that time, HCHS had failed to respond to the allegations of the FERPA violation, illegal recruitment, residence and eligibility issues for Transfer Student, and retaliation against Plaintiff.

56. Having not received any information regarding requests for investigations other than bullying, on October 7, 2024, Plaintiff's parent sent yet another letter to the school's attorney with a request for a formal investigation into the allegations of recruitment of a student and retaliation against Plaintiff by Defendant coaches.  A copy of the letter is attached hereto and labeled **Exhibit 14.**

57. By that point, Defendants were well-aware of the alleged violations of IHSA rules and other laws and provided with substantial proof of the illegal transfer and ineligibility matters involving Transfer Student; however, nothing had been done by Defendants, as evidenced by Transfer Student's continued participation on the team and failure to respond to Plaintiff's parent regarding these matters.

58. At that time, attorneys for Defendants indicated that they would forward the complaint to the school for investigation, as if it were the first time the information

had been presented to Defendants.  A copy of that email is attached and labeled **Exhibit 15.**

59. Following an alleged discussion by Walters to the HCHS Football team regarding bullying and retaliation, on October 21, 2024, Plaintiff's parent reported another incident of bullying and intimidation by the Transfer Student and other football teammates against Plaintiff's younger sibling who is also a student at HCHS. The HCHS football team member stated, "Yo.  F**k your brother, n****r."  An investigation was conducted and Dougherty responded back by stating that the incident did, in fact, take place and disciplinary measures were allegedly taken against the team member (and not the Transfer student or other team member); however, Dougherty found that the comment alone did not meet the "severe or pervasive physical or verbal act or conduct" standard, as defined in their bullying policy.   A copy of the email response from Dougherty dated October 31, 2024 is attached hereto and labeled **Exhibit 16.**

60. On November 11, 2024, Plaintiff's parent received a response from Defendants regarding the outcome of their investigation into retaliation by the coaches against Plaintiff, but only regarding the comment made by Zimmerman to Plaintiff on the football field on October 4, 2024.  See paragraph 41 herein.  There was no investigation by Defendants into Plaintiff's claims of retaliation through the FERPA violation, demotion on the team, or reduced playing time at practice and during games.  Defendants determined that Plaintiff was isolating himself from the coaches and the team on October 4, 2024, and Zimmerman had the right to make the comment to Plaintiff as the coach of the team.  Zimmerman's comment

was made to Plaintiff within 4 days of Plaintiff's return to the team following the extreme and severe incidents of bullying by his teammates. A copy of the letter sent by Asbury is attached hereto and labeled **Exhibit 17.**

Violations of Rules, Policies, Procedures, and IHSA By-laws

61. Defendants' inactions, concealment of information, and failure to properly investigate Plaintiff's parent's claims resulted in violations of HCHS' own anti-bullying and retaliation policies and IHSA by-laws. The anti-bullying policies are included in each of the following HCHS Handbooks: Student Handbook, Athletic Handbook, and Coaches Handbook, copies of which are attached hereto and labeled **Exhibits 18, 19, and 20,** respectively. A copy of the HCHS bullying policy on file with the Illinois State Board of Education is attached hereto and labeled **Exhibit 21.**

Effects of the Bullying, Threats, Harassment, and Retaliation

62. The bullying, threats, harassment, isolation, and retaliation against Plaintiff escalated after numerous reports were made to HCHS by Plaintiff's parent. As a result, Plaintiff missed days of football practice and attendance at a game due to safety concerns and Defendants failure to take appropriate action. Plaintiff was fearful of his safety on school grounds and was the subject to inquiries and conversations amongst students and HCHS staff.

63. Plaintiff's sibling was humiliated, embarrassed, and called a hateful, derogatory name in the presence of his friends by the Transfer Student and other football team members due to the lack of proper instruction and protection by Defendants.

64. The mistreatment of Plaintiff's by Defendants, through their actions and inactions, effectively forced him off the football team during the season.

65. Plaintiff was a scholar athlete on the team, one of few team members to volunteer for community service, a leader, and a role model to other teammates. When Plaintiff was effectively forced off the team, he had been punished and insulted by the coaches, mistreated, threatened, ignored by teammates at practices and games, disparaged online within the community, accused of isolating himself from the team, and demoralized by the coaching staff following his parent's legitimate claims of recruiting, ineligibility and residence issues of the Transfer Student.

66. For weeks, Plaintiff would walk the school hallways and parking lot accompanied by other students due to safety concerns.

67. Plaintiff found it necessary to ask a staff member to escort him to the football locker room to obtain his personal belongings after-hours when the football team and coaches were not present.

68. During the time when Plaintiff was suffering the most, the coaches failed to communicate with him, contact him, protect him, speak to him in a respectful manner, or otherwise discuss his position on the team. Rather, they chose to demote him on the team, demoralize and insult him during practices and games, and speak to him in a manner which further isolated him from the team.

69. The lack of coach advocacy for Plaintiff, because of his parent's reporting of the transfer, residence, and eligibility matters related to the Transfer Student, severely impacted Plaintiff's ability to receive college football prospects and

potential scholarships. The retaliatory actions against Plaintiff eliminated his opportunity to receive the exposure to college football coaches and recruiters. Further the lack of "game tape" and playing statistics hindered his ability to provide video and play statistics to college football coaches or recruiters.

## FIRST CLAIM

### AGAINST ALL DEFENDANTS

### FREEDOM OF SPEECH RETALIATION

### 42 U.S.C. §1983 – FIRST AMENDMENT CLAIM

70. Plaintiff realleges and reincorporates the facts as set forth in paragraphs 1 through 70 as if fully set forth herein.

71. Plaintiff and his parents enjoy and possess a right under the First Amendment to the Constitution of the United States ("First Amendment") to engage in speech on matters of public concern, including school-related matters and activities, and submit requests for information and investigations by the school, free from retaliation.

72. Plaintiff's parent engaged in protected speech under the First Amendment when she reported concerns regarding misapplication of HCHS' transfer and residence rules, non-payment of tuition, and HCHS' failure to comply with IHSA by-laws regarding transfer, residence, and eligibility for school sports pertaining to the Transfer Student.

73. The Defendants' arbitrary and capricious enforcement of their own policies and rules regarding anti-bullying and retaliation, concealment of violations of IHSA by-laws regarding the transfer and eligibility of the Transfer Student, and failure

to properly investigate all claims made by Plaintiff's parent, were all in retaliation for said protected speech and conduct.

74. Defendants retaliated against Plaintiff by taking adverse action against him in one or more of the following ways:

    a.  Upon information and belief, one or some of Defendants showed the Transfer Student a copy of the September 18, 2024 letter prepared by Plaintiff's parent, which included Plaintiff's name and Plaintiff's parent's name, in direct violation of FERPA and the Illinois Student Records Act. As a result of the release of Plaintiff's and his parent's private information, the Transfer Student's mother contacted Plaintiff's mother for a copy of the letter; the Transfer Student contacted many football teammates and disclosed to them that Plaintiff caused his ineligibility to play and forfeit of a game for the team; and Plaintiff's and his parent's names became known throughout social media platforms wherein both were disparaged within the community, mostly by HCHS football parents and relatives of HCHS coaches;

    b.  Zimmerman and/or Warren removed Plaintiff from his role as first-in-play backup (ie. second string) position on the football team and, as a result, he received virtually no practice time with the team or playing time in the games following the report to the school;

    c.  Dougherty, Zimmerman, Warren, Walters, and other coaching staff members ignored, condoned, and/or facilitated the harassment of Plaintiff by their inactions and actions, including, but not limited to the following: 1)

their failure to instruct, supervise, and/or discipline members of the HCHS Boys' Varsity Football Team for bullying and harassment activities, 2) ongoing concealment of the recruitment, residency, and ineligibility matters pertaining to the Transfer Student, which Plaintiff and his parents brought to light, and 3) engaging in retaliatory actions of their own against Plaintiff;

d.  Late reports and/or lack of meaningful, or any, investigations into: Plaintiff's parent's allegations of ineligibility/residency of the Transfer Student; retaliation against Plaintiff; FERPA and Illinois Student Records Act violations; and bullying, harassment, threats, and intimidation against Plaintiff. By retaining the Transfer Student in the starting position for the season, the school chose to ignore and disregard residency provisions of the Illinois School Code and the transfer, and residency and eligibility by-laws promulgated by the IHSA. Additionally, nothing was done within a reasonable time given the seriousness of retaliation against Plaintiff, or the FERPA violation by Walters and/or Zimmerman. The school was first made aware of the bullying and retaliation claims on September 25, 2024, and the matters remain minimally investigated, if at all. This delay, disregard for the safety of Plaintiff, and disregard of legitimate claims made by Plaintiff's parent served to ratify and approve the harassment and retaliation of Plaintiff by coaching staff and teammates.

75. The acts of retaliation created significant pressure, mental distress, and emotional trauma on Plaintiff. Plaintiff suffered from anxiety, fear for his personal

safety and that of his family members, loss of sleep and appetite, and fear of continued repercussions by the football coaching staff, school administration, teammates, and students.

76. Furthermore, the loss of playing time and premature end of his time on the HCHS football team resulted in mental anguish and significant loss of exposure and damage to future football prospects for Plaintiff.

77. Under these circumstances, and without coach advocacy and their willingness to assist Plaintiff, including the development of "game tape" for Plaintiff to demonstrate his abilities, Plaintiff's college scholarship prospects were significantly diminished. Not to mention, Plaintiff's entire football season would have played out much differently if Defendants had not concealed the recruitment and ineligibility for the Transfer Student to play on the team.

78. The actions of concealment by HCHS administration, retaliation by the coaching staff, and bullying by the Transfer Student, teammates, and other HCHS students resulted in significant mental anguish to Plaintiff. Plaintiff was forced to face every school day with his peers and teachers with conversations, comments, and questions surrounding what he did to the football team and to the Transfer Student. Plaintiff found it necessary for other students to accompany him in the hallways and parking lot for safety reasons for many days following the report to the school.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages; plus costs, attorney's fees, disbursements and other such relief as this Court deems fair and just.

## SECOND CLAIM

### VIOLATION OF FERPA AND ILLINOIS STUDENT RECORDS ACT

### 20 U.S.C. § 1232g and 105 ILCS 10/ et seq.

### WILFUL AND WANTON RELEASE OF PRIVATE INFORMATION

79. Plaintiff realleges and reincorporates the facts as set forth in paragraphs 1 through 70 as if fully set forth herein.

80. The letter sent by Plaintiff's parent to Walters and Zimmerman on September 18, 2024 constitutes an "education record" under FERPA and a "School Student Record" under the Illinois School student Records Act, as it contains personally identifiable information regarding Plaintiff and his parent. See **Exhibit 1.**

81. On September 19, 2024, the Transfer Student was called down to the HCHS school office by Defendants.

82. Upon information and belief, a copy of the foregoing letter sent by Plaintiff's parent was shown to the Transfer Student by one or some of the Defendants.

83. Plaintiff and his parent(s) did not consent to the release of information by Defendants to the Transfer Student or his family.

84. On September 20, 2024, the Transfer Student was ineligible to play in the football contest following submission of Plaintiff's parent's letter to the school.

85. On or about September 20, 2024, the Transfer Student contacted numerous teammates on the football team telling them that Plaintiff and/or his parent caused his ineligibility to play in the game and forfeit of a season game.

86. On September 22, 2024, Nicole Kelly contacted Plaintiff's parent with a request for a copy of the letter sent to the school. See **Exhibit 4.**

87. As a direct result of the release of the subject letter by one or some of the Defendants to the Transfer Student and/or his family, Plaintiff was subjected to bullying, intimidation, embarrassment, humiliation, disparagement, online disparagement within the community, threats of violence, and retaliation by teammates and HCHS coaches. Further, Zimmerman and Warren demoted Plaintiff in his position on the football team, reduced his practice time, and reduced his playing time on the field as a direct result of his parent's inquiry.

88. The release of Plaintiff's private information by Defendants caused emotional distress and mental anguish to Plaintiff.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages; plus costs, attorney's fees, disbursements and other such relief as this Court deems fair and just.

**THIRD CLAIM**

**AGAINST HCHS, DOUGHERTY, WALTERS, ZIMMERMAN, WARREN, AND ASBURY**

**BREACH OF CONTRACT, OR ALTERNATIVELY BREACH OF IMPLIED CONTRACT**

**HCHS HANDBOOKS**

89. Plaintiff realleges and reincorporates the facts as set forth in paragraphs 1 through 70 as if fully set forth herein.

HCHS Contractual Agreements between Student and School

90. For the 2024-2025 school year, to register and enroll as a student in HCHS, the terms of the Student Handbook must be acknowledged and accepted by the parent(s) and student by manually checking a box online for the parent(s) and

student. If the boxes are not checked, a student cannot register and enroll in HCHS.

91. Page 3 of the Student Handbook contains a "Student Acknowledgment" of receipt of and access to the Handbook; review and understanding of the rules, responsibilities, and expectations; and pledge by each student to adhere to the District rules, policies and procedures. *See* **Exhibit 18** at page 3.

92. After execution of the online form by Plaintiff and his parent, and submission of the same to HCHS, Plaintiff began his Senior year in HCHS, and Defendants allowed Plaintiff to attend HCHS to obtain his high school degree.

93. Similarly, to register and enroll as a student-athlete for the 2024-2025 HCHS sports teams, the terms of the Athletic Handbook and IHSA Eligibility By-Law Summary must be acknowledged and accepted by the parent(s) and student by manually checking a box online for the parent(s) and student. If all boxes are not checked, a student cannot register and enroll in a sport. See attached **Exhibit 22** which is a page from "Snap! Manage" for student enrollment in HCHS sports. Further, the last page of the Athletic Handbook includes an "Activity Pledge Sheet" which must be executed by both the student-athlete and the parent regarding certain behaviors expected of the student-athlete, agreement to accept and abide by the policies, standards, rules, and regulations set forth by the HCHS Board of Education and the sponsors for the activity in which the student participates. See page 35 of **Exhibit 19.**

94. Page 3 of the Athletic Handbook states, in pertinent part, as follows:

"**. . . Failure to read this handbook does not excuse student athletes from the rules and procedures described herein. Personal factors or**

**contradictory advice from any source are not acceptable grounds for seeking exemptions from these rules and procedures. . . ".  Id at page 3.**

95. After execution of the online form by Plaintiff and his parent, and submission of the same to HCHS, Plaintiff was registered and enrolled for the HCHS football team.

96. For the year 2024-2025 school year, HCHS issued a "Coaches Handbook" which was "developed for the purpose of establishing guidelines in the operation of the interscholastic athletic program in District 207 . . . ".  It further states that, "By following the procedures described in this handbook, athletic program personnel will enhance and foster the district's tradition of athletic excellence."  See **Exhibit 20** at page 3.

97. All HCHS Handbooks (ie. Student, Athletic, and Coaches Handbooks) contain various statements, pledges, promises, provisions, rules, and procedures relative to residence, eligibility, discipline, protection of privacy of students, bullying, harassment, inciting, intimidation, threats, retaliation, and FERPA protections. IHSA Rules and By-laws are Binding upon HCHS and the Student-Athlete

98. The IHSA Constitution and By-laws are the framework of rules that govern interscholastic competition among IHSA member schools.

99. HCHS is a member school of IHSA, and therefore, adopted and is subject to the IHSA Constitution and By-laws.  See attached IHSA Index of Member Schools for HCHS labeled **Exhibit 23** and IHSA Key Provisions Regarding IHSA Rules labeled **Exhibit 24.**

100.     An HCHS student who becomes a member of a sports team is subject to and must follow HCHS and IHSA rules to be eligible for interscholastic

participation.  See Eligibility Rules of **Exhibit 24.**

101.     HCHS principal, Dougherty, is responsible to see that only eligible students represent the school in interscholastic competitions.  Further, only the IHSA Executive Director is authorized to make formal rulings on eligibility, so if the principal [Dougherty] has questions or wishes assistance in answering questions, the principal [Dougherty] should contact the IHSA office.  **Id.**

102.     A student-athlete may lose eligibility for interscholastic competitions if not in compliance with IHSA by-laws.  **Id.**

103.     Pursuant to 2024-2025 IHSA By-law 3.030 entitled "Residence" and its subparagraphs, an HCHS student-athlete's eligibility is dependent on the location of the residence where the student lives full time with both of his parents.  See IHSA By-law 3.030 attached hereto and labeled **Exhibit 25.**

104.     Pursuant to 2024-2025 IHSA By-law 3.040 entitled "Transfer" and its subparagraphs, for a student who transfers from one high school to another high school, HCHS must file the executed "Principals' Concurrence Regarding Transfer" form with the IHSA Office. The execution of this form does not grant authority to Dougherty or other school representative to make an eligibility ruling. Eligibility rulings are the sole responsibility of the IHSA Executive Director.  If an eligibility question is raised, HCHS is required to contact or write the Executive Director for a ruling.  See IHSA By-law 3.040 entitled "Transfer" in **Exhibit 25.** Principals' Concurrence Regarding Transfer form attached and labeled **Exhibit 26** and Special Notice – About Eligibility Rulings from IHSA for the 2024-2025 School Term attached and labeled **Exhibit 27.**

105.     If a request for an eligibility ruling of a student-athlete is made by the
school to IHSA, additional documents must be filed with the IHSA, including the
following: Transfer Eligibility Form, Transfer Component from Receiving School
Coach, Residence Eligibility and Affidavit of Residence.  Id.  See attached forms
labeled **Exhibit 28.**  See also **Exhibit 3.**

106.     IHSA defines a "Move" as "the actual physical relocation <u>in joint residence</u>
by the parents of a student and the student from one school district to another,
<u>with the intent to reside there indefinitely and terminate all occupancy of their</u>
<u>previous residence</u> (By-law 3.041)."  See IHSA definitions attached hereto and
labeled **Exhibit 29.**

107.     Defendants stand in breach of the <u>Student Handbook</u>, for all or some the
following reasons:

  a.  Failure to create a positive, safe, and welcoming school climate for
      Plaintiff (See all paragraphs of First Claim herein);

  b.  Failure to protect Plaintiff from harassment, bullying, intimidation, threats,
      recruiting, and retaliation (See all paragraphs of First Claim herein);

  c.  Failure to protect Plaintiff's private student information;

  d.  Failure to properly and thoroughly investigate claims raised by Plaintiff's
      parent, including residence and eligibility of the Transfer Student,
      harassment, bullying, intimidation, threats, recruiting, and retaliation (See
      First Claim herein);

  e.  Failure to properly discipline, instruct, or otherwise implement other
      corrective measures with HCHS coaches and football teammates for

prohibited behavior.

108.    Defendants stand in breach of the <u>Athletic Handbook</u>, for all or some the

following reasons:

    a.   Failure to properly and thoroughly investigate residence and eligibility

       matters pertaining to the Transfer Student and his family following claims

       made by Plaintiff's parent;

    b.   Submission of false and/or unverified information to the IHSA regarding

       the Transfer Student's residence and eligibility;

    c.   Failure to request an eligibility hearing with IHSA following claims made by

       Plaintiff's parent regarding the Transfer Student;

    d.   Failure to investigate claims of alcohol use or attendance at a party where

       alcohol was present by the Transfer Student and other teammates and

       failure to implement disciplinary measures;

    e.   Failure to protect Plaintiff from harassment, bullying, intimidation, threats,

       recruiting, and retaliation;

    f.   Failure to properly and thoroughly investigate claims raised by Plaintiff's

       parent, including residence and eligibility of the Transfer Student,

       harassment, bullying, intimidation, threats, recruiting, and retaliation (See

       paragraphs 69 through 77 of First Claim herein);

    g.   Failure to properly discipline, instruct, or implement other corrective

       measures with HCHS coaches and football teammates for prohibited

       behavior (See paragraphs 69 through 77 of First Claim herein);

    h.   Failure to adhere to IHSA rules regarding recruitment, retaliation, eligibility

and transfer.

109.    Zimmerman and Warren stand in breach of the Coaches Handbook for all or some of the following reasons:

    a.  Failure to protect Plaintiff from bullying by the Transfer Student and other HCHS football teammates;

    b.  Failure to adhere to the IHSA rules regarding recruitment and retaliation;

    c.  Failure to maintain professional and ethical standards of conduct in relation to Plaintiff;

    d.  Failure to protect Plaintiff's private student information;

    e.  Failure to properly and thoroughly investigate claims raised by Plaintiff's parent, including alcohol use by other teammates, harassment, bullying, intimidation, and threats;

    f.  Concealment of the recruiting, residence, and eligibility issues regarding the Transfer Student;

    g.  Concealment of retaliation against Plaintiff;

    h.  Failure to properly discipline, instruct, and/or implement corrective measures with HCHS football teammates for prohibited behavior.

110.    All Defendants stand in breach of the IHSA Constitution and By-laws for all or some of the following reasons:

    a.  Failure to properly and thoroughly investigate residence and eligibility matters pertaining to the Transfer Student and his family following claims made by Plaintiff's parent;

    b.  Submission of false and/or unverified information to the IHSA regarding

the Transfer Student's residence and eligibility;

c. Failure to request an eligibility hearing with IHSA following claims made by Plaintiff's parent;

d. Recruitment of the Transfer Student to participate in HCHS sports;

e. Knowingly and intentionally allowing the Transfer Student to participate in HCHS sports as an ineligible athlete.

111. As a direct and proximate result of Defendants' breaches of contracts, Plaintiff suffered significant mental anguish, emotional distress, and loss of opportunity related to college prospects and scholarships.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages, punitive damages, plus costs, attorney's fees, disbursements and other such relief as this Court deems just and fair.

### FOURTH CLAIM

**AGAINST DOUGHERTY, WALTERS, ZIMMERMAN, WARREN, AND ASBURY**

**WILLFUL AND WANTON CONCEALMENT**

112. Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1 through 112 as if fully set forth herein.

113. On September 18, 2024, and no later than October 2, 2024, the named Defendants in this claim were informed of the residence and eligibility issues surrounding the Transfer Student and his family, and were presented with credible evidence of these claims from Plaintiff's parent. Defendants failed to properly investigate; ignored and/or disregarded IHSA eligibility requirements; concealed or otherwise produced misleading and/or unverified information to

IHSA; and unilaterally, without IHSA authorization, made the determination that the Transfer Student is an eligible player under IHSA by-laws.

114.     Additionally, on or about September 25, 2024, and no later than October 2, 2024, Defendants in this claim were informed of retaliatory harassment against Plaintiff because of his parent's inquiry and request for investigation into the Transfer Student's residence and eligibility to play sports.  Defendants, again, failed to properly investigate, concealed, ignored and/or disregarded policies and procedures contained within its own Handbooks, and failed to take any disciplinary measures against teammates and coaches.

115.     Zimmerman, Walters, and/or assistant coach(es), specifically, facilitated retaliatory efforts against Plaintiff through the release of Plaintiff's private student information to the Transfer Student and/or his family, demoting Plaintiff on the team, and reducing his practice and game time.  Defendants failed to investigate any of these claims of retaliation and/or concealed the information.

116.      Zimmerman's failure to protect Plaintiff or otherwise instruct and/or discipline his football team encouraged such behavior to continue.

117.     On September 25, 2024, Defendants learned of the retaliation by Zimmerman and Warren against Plaintiff; and despite this knowledge, did not open an investigation earlier than October 7, 2024, after repeated letters were sent by Plaintiff's parent.

118.     On October 4, 2024, Zimmerman, knowing of the severity of bullying and threats against Plaintiff just days prior, chose to exacerbate the situation by singling out Plaintiff following his return to the team and suggest that he "walk

away" from the team. At that point, Plaintiff determined that he was no longer welcome to participate on the team.

119.     When an investigation finally did take place, Defendants failed to investigate all claims of retaliation, and focused only on the statement made by Zimmerman to Plaintiff. Defendants determined that Plaintiff was isolating himself and chose not to engage with the team, and that Zimmerman properly addressed Plaintiff's behavior. See **Exhibit 17.**

120.     By failing to promptly open an investigation into known retaliation and further deny that it occurred, Defendants demonstrated willful and wanton misconduct.

121.     This delay and lack of action resulted in escalating harassment and threats against Plaintiff by the coaches and teammates, without repercussions.

122.     As a proximate result of the acts and omissions of Defendants, Plaintiff suffered significant mental anguish, emotional distress, and loss of opportunity related to college prospects and/or scholarships.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages, punitive damages, plus costs, attorney's fees, disbursements and other such relief as this Court deems just and fair.

<u>**FIFTH CLAIM**</u>

**AGAINST DOUGHERTY, WALTERS, ZIMMERMAN, WARREN, AND ASBURY**

**WILLFUL AND WANTON FAILURE TO PROTECT**

123.     Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1 through 123 as if fully set forth herein.

124.     Defendants have responsibilities to ensure that HCHS has and implements proper training and best practices to ensure that student safety is prioritized, that athletic programs be properly supervised and coaches properly vetted, and that when incidents occur, proper steps are taken to protect the students.  That did not occur here.

125.     Despite knowing of the retaliatory harassment, bullying, threats, intimidation of Plaintiff, Defendants took no action to prevent the release of Plaintiff's identity and that of his parent.  In fact, members of the HCHS football coaching staff willingly provided the information to the Transfer Student and/or his family, who then released the information to his family, the football team, students, and other members of the community.

126.     As a result, at the time the bullying investigation was initiated by the school, Plaintiff's parent did not believe Defendants would keep Plaintiff's name private during their interviews of certain students into the allegations by Plaintiff, and refused to release the names of the students to the school due to ongoing fear and safety for Plaintiff on school grounds.

127.     The situation was volatile, hostile, and traumatic, as evidenced by the statements and threats made by teammates and retaliation by Defendant coaches against Plaintiff, after Defendants did nothing to protect the identity or person of Plaintiff.

128.     Furthermore, Zimmerman and Walters did nothing to ensure that Plaintiff was safe during practices and games.  In fact, Zimmerman's and/or Walter's release of Plaintiff's identity caused and facilitated the unsafe and hostile team

environment.  Walters, Zimmerman, and Warren failed to properly instruct, discipline, or otherwise implement safety measures for the protection of Plaintiff. As is evident from his media commentary and statements made to Plaintiff by Zimmerman, Zimmerman was upset with and resented Plaintiff for the reports made by his parent and the effect of the same on the team.

129.     Zimmerman facilitated the hostile environment by singling out Plaintiff on the field during a football game and telling him to "walk away."

130.     As further evidence of the pattern of behavior by Defendants, disdain for Plaintiff and/or his parents, and refusal to accept the sanctions issued by the IHSA, Defendants created, authorized, and sold clothing apparel for the 2024-2025 HCHS Varsity Football Team which advertised the team as "undefeated NIC-10 champions" in the conference with a record of "9-0," when the official game record was 8-1 due to the forfeit of a game because of the ineligibility of the Transfer Student.  A copy of the clothing print is attached hereto and labeled **Exhibit 30.**

131.     Defendants featured the Transfer Student for a full-page article in its October 2024 "Hononegah Highlights" publication, and further discussed the forfeit of the game as a "technicality" and "devastating knock to our record."  See relevant portion of the Hononegah Highlights publication attached and labeled **Exhibit 31.**

132.     Zimmerman's and/or Walter's deliberate actions and Defendants' inactions were choices that demonstrated a conscious disregard or deliberate indifference to the safety of Plaintiff.  The circumstances left Plaintiff unprotected and subject

to trauma and emotional distress.

133.     Because of their reckless and wanton supervision, hostile environments

such as this one created by HCHS – where allegations of failure to follow IHSA

eligibility rules come to light, the team is sanctioned by IHSA, and coaches and

teammates retaliate and bully against the reporter - foster a dangerous and

hostile culture for students.  Yet, this environment was allowed to exist and

flourish to the detriment of students such as Plaintiff, due to minimization of

Plaintiff parent's allegations, disregard of IHSA rules, lax oversight of the athletic

program, and failure to follow training procedures and protocols.

134.     As a proximate result of the acts and omissions by Defendants, Plaintiff

suffered significant mental anguish, emotional distress, and loss of opportunities

related to college prospects and scholarships.

WHEREFORE, Plaintiff demands judgment in an amount to be established

at trial for compensatory damages, punitive damages, plus costs, attorney's fees,

disbursements and other such relief as this Court deems just and fair.

## SIXTH CLAIM

### AGAINST DOUGHERTY, ZIMMERMAN, WARREN, AND WALTERS

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

135.     Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1

through 135 as if fully set forth herein.

136.     At all relevant times hereto, Defendants were employees of HCHS.

137.     Zimmerman, Walters, and/or members of the HCHS coaching team

leaked the identity of Plaintiff and his parent to the Transfer Student and/or his

family, knowing that the Transfer Student would share that information with the team and that other teammates would retaliate against Plaintiff. The Transfer Student then revealed the identity of Plaintiff to members of the football team knowing that such individuals would retaliate against him, which they did.

138.     To compound the distress, Zimmerman and Warren, amongst other means, demoted Plaintiff on the team and eliminated Plaintiff 's practice time and playing time on the field. By doing so, along with the comment made by Zimmerman, Zimmerman and Warren effectively forced Plaintiff off the team.

139.     On or before September 25, 2024, and no later than October 2, 2024, Dougherty and Walters were informed of the harassment and retaliation against Plaintiff by the coaches, Transfer Student, and other football teammates. Defendants' investigation into the allegations of bullying by the Transfer Student and other teammates was terminated due to a lack of corroborative evidence, no disciplinary measures were taken, and no instructions or warnings were given to the team. The bullying and harassment against Plaintiff was condoned, escalated, and continued. Weeks later, the Defendants' investigation into additional bullying and harassment against Plaintiff 's relative was indicated, with minimal disciplinary action, if any. And finally, the investigation into retaliation against Plaintiff by the coaches was delayed, selective, and focused on only one instance, which was unfounded and without any disciplinary action or proper instruction.

140.     Dougherty refused to release the names of the football teammates who were allegedly investigated regarding bullying accusations, even though the

Transfer Student had been identified as one of the main perpetrators. Through his interviews of coaches and undisclosed teammates, Dougherty found no corroborating evidence and the investigation was concluded without disciplinary action or instruction against any football teammates.

141. The actions of Dougherty, Walters, Zimmerman, and Warren by ignoring the allegations made by Plaintiff 's parent, continuing to keep the Transfer Student in the starting position on the team, praising the Transfer Student as a star member of the team, and derailing Plaintiff's bullying and retaliation accusations were meant to make Plaintiff feel helpless enough to drop the allegations and leave the team – the latter of which was accomplished.

142. Defendant coaches, in particular, are role models to students and "hold a unique position of trust, care, authority, and influence in relation to students." See Coaches Handbook, **Exhibit 20.** Further, "District employees breach employee-student boundaries when they misuse their position of power over a student in a way that compromises the student's health, safety, or general welfare." **Id.** By their actions, omissions, concealment, mistreatment, and failure to protect, Defendants abused their positions of power over Plaintiff and he suffered greatly in their hands.

143. Defendants' coordinated retaliation against Plaintiff was extreme, dangerous, and calculated to cause Plaintiff severe emotional distress.

144. As a proximate result of Defendant's actions, Plaintiff suffered significant mental anguish and loss of opportunity related to college prospects and scholarships.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages, punitive damages, plus costs, attorney's fees, disbursements and other such relief as this Court deems just and fair.

<u>**SEVENTH CLAIM**</u>

**AGAINST BRIAN KELLY AND NICOLE KELLY**

**RESIDENCY FRAUD**

145.     Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1 through 70, 91-92, 94-95, 101, 103-107 as if fully set forth herein.

146.     To comply with the residency portion of HCHS' 2024-2025 registration process, families must submit only 2 forms of proof of residency: property tax bill, lease, or utility bill.  As noted on the school's website, "falsifying residency is a criminal offense (Class C misdemeanor) for both the resident who is the falsifying the residency AND the family enrolling."  See attached **Exhibit 32.**

147.     Unlike nearby school districts, HCHS does not verify the residences of students following submission of the foregoing information at the time of registration, and relies solely upon minimal information provided by the parents, guardian, or custodial parent to enroll the student within the HCHS school district.

148.     Pursuant to the Illinois School Code, only <u>resident</u> students of a school district may attend the schools of the district without payment of tuition.  See 105 ILCS 5/10-20.12b.

149.     Upon information and belief, the Kellys deliberately and intentionally submitted <u>temporary</u> housing information to HCHS for registration and enrollment of the Transfer Student within the district for the dual purpose and motivation to

obtain tuition-free education for their son and, primarily, to have him participate in a starting position on the HCHS Varsity Football team.

150.    Defendants accepted the Kellys registration and enrolled the Transfer Student as an HCHS student for the remainder of the 2023-2024 school year and for the 2024-2025 school year.

151.    Upon information and belief, the Kellys temporary housing arrangement is not intended to serve as their permanent residence, as they continue to maintain their permanent residence in the State of Wisconsin and treat it as the same. The Kellys continue to pay property taxes in the State of Wisconsin, a portion of which is earmarked for funding of the Transfer Student's former high school.

152.    Upon information and belief, the Transfer Student was offered and/or promised a starting position on the HCHS football team if the Kellys obtained housing within the school district. The Kellys accepted the offer and obtained temporary housing within the district; while the Defendants accepted the registration and enrollment of the Transfer Student within its school district, and fulfilled their promise to give Transfer Student a starting position on the football team, in a position that he had never played.

153.    The HCHS Varsity Football team has a history of NIC-10 conference championship titles. Many HCHS students have received internal and external publicity, college recruitment offers, and scholarships to play football in college. The Kellys were motivated to transfer their son to the HCHS district for a starting position on this elite team and for exposure of the Transfer Student to college football prospects and scholarships. Promises were fulfilled by all Defendants.

154.    The Transfer Student has been allowed to attend school within the district

on a tuition-free basis and take a position on the sports team over a resident,

tuition-paying pupil, Plaintiff.

155.    By Defendants' violations of the Illinois School Code, Plaintiff lost the

starting position on the team, received less practice time with the team, received

minimal playing time at games, and loss of opportunity related to college

prospects.  As a result, Plaintiff suffered emotional distress and mental anguish

in losing a position on the team for which he endlessly trained and prepared.

WHEREFORE, Plaintiff demands judgment in an amount to be established at

trial for compensatory damages, punitive damages, plus costs, attorney's fees,

disbursements, and other such relief as this Court deems just and fair.

## EIGHTH CLAIM

## AGAINST ALL DEFENDANTS

### FRAUDULENT CONCEALMENT

156.    Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1

through 70, 91-92, 94-95, 101, 103-107, and 147-153 as if fully set forth herein.

157.    Upon information and belief, Brian Kelly or Nicole Kelly submitted

misleading or false information regarding their permanent residence to HCHS for

registration of the Transfer Student within the school district and for participation

in sports, the latter of which was the motivating factor for enrollment for the

Transfer Student's final year of high school.

158.    Since the Kellys transferred their son to the HCHS school district in 2023,

they have not taken any steps to list their permanent residence in Wisconsin for

sale, nor have they taken any steps to become Illinois residents, including the transfer of vehicle plates and registration.

159.     The Kellys intend to reside and continue to maintain their permanent residence in Wisconsin.  In August of 2024, when the Kellys had a <u>temporary</u> residence within the HCHS school district, the Kellys hosted a cookout for certain members of the football team near the end of the 2024 summer football camp at their <u>permanent</u> residence in Wisconsin.

160.     For all intents and purposes, the Kellys are residents of Wisconsin which is widely known amongst the HCHS football community, including HCHS coaches.

161.     Upon information and belief, the Kellys and certain HCHS football coaches, including Zimmerman, concealed disclosure of the Kelly's permanent residence to HCHS administrative Defendants for the Transfer Student to participate in HCHS school sports.

162.     Pursuant to IHSA rules, Dougherty is required to ensure that only eligible students represent the school in interscholastic competitions.

163.     No later than September 18, 2024, Defendants were placed on notice of the residence and eligibility issues pertaining to the Transfer Student through the letter sent by Plaintiff's parent.

164.     Since that time, Defendants failed to properly investigate the matter and adopted and accepted the information provided to them by Brian Kelly and Nicole Kelly regarding their permanent residence, as evidenced by the Transfer Student's continued participation on the football team.

165.     Upon information and belief, Defendants further concealed the information regarding the Kelly's permanent residence and submitted an Affidavit of Residence for the Transfer Student to IHSA which contained false and/or misleading information in a joint effort to promote the Transfer Student's eligibility on the football team.

166.     The IHSA accepted the Affidavit of Residence submitted by Defendants and Defendants determined that the Transfer Student was eligible for play on the football team.

167.     HCHS administration and coaches willfully and intentionally concealed information regarding the Kelly's permanent residence from the IHSA for the Transfer Student to continue to play in the football season.

168.     Upon information and belief, Dougherty failed to request an eligibility ruling with the IHSA for the Transfer Student and unilaterally determined that he was eligible to play on the team.

169.     As a direct result of the Defendants recruitment of the Transfer Student, intentional concealment of information from IHSA, and unilateral determination that the Transfer Student was eligible to play on the team, Plaintiff lost the starting position on the team, received less practice time with the team, received minimal playing time at games, loss of opportunity related to college prospects, and suffered from emotional distress and mental anguish.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages, punitive damages, plus costs, attorney's fees, disbursements, and other such relief as this Court deems just and fair.

## EIGHTH CLAIM

## AGAINST ALL DEFENDANTS

## VIOLATIONS OF ILLINOIS SCHOOL CODE

170.   Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1 through 70, 91-92, 94-95, 101, 103-107, and 147-170 as if fully set forth herein.

171.   The Transfer Student is not a <u>permanent</u> resident pupil of the HCHS school district.

172.   Upon information and belief, the Kellys do not pay tuition for the Transfer Student's attendance within the HCHS school district, in violation of the Illinois School Code.  See 105 ILCS 5/10-20.12b(b).

173.   Pursuant to the foregoing section of the Illinois School Code, if the HCHS School Board determines that a pupil who is attending school in the district on a tuition-free basis is a nonresident of the district, the HCHS School Board <u>shall</u> notify the person who enrolled the pupil of the amount of the tuition that is due to the district.

174.   No later than September 25, 2024, following notice of residency issues regarding the Transfer Student by Plaintiff's parent, Defendants, including the HCHS School Board, did nothing to investigate or otherwise pursue payment of tuition by the Kellys as nonresidents of the school district.

175.   Brian Kelly, Nicole Kelly, and the Transfer Student are not permanent residents of Illinois nor do they have the intent to permanently reside within this state.

176.   Upon information and belief, the Kellys do not own real estate property

within the State, are not employed in Illinois, and do not pay real estate taxes in Winnebago County, Illinois.

177.    The Kellys are residents of Wisconsin, own real estate property in Wisconsin, are employed in Wisconsin, and pay real estate and income taxes in Wisconsin.

178.    The Transfer Student attended high school from his Freshman year through part of his Junior year in the State of Wisconsin.

179.    The Kellys obtained <u>temporary</u> housing in Illinois for the sole purpose of the Transfer Student's tuition-free attendance at HCHS and participation in HCHS school sports.

180.    Under the statute and as stated on the HCHS website, a person who knowingly or willfully presents to any school district false information regarding the residency of a pupil for the purpose of enabling that pupil to attend any school in that district without payment of a nonresident tuition charge shall be guilty of a Class C misdemeanor.  Further, a person who knowingly enrolls in the schools of a school district on a tuition free basis a pupil known by that person to be a nonresident of the district shall be guilty of a Class C misdemeanor.

181.    Upon information and belief, the Kellys submitted information to HCHS and IHSA which falsely states or otherwise misrepresents that their permanent residence is in the State of Illinois.

182.    The Kellys knowingly and willfully presented false information to the HCHS school district regarding their permanent residence and enrolled the Transfer Student in the school district for the sole purpose of tuition-free attendance at

HCHS and participation in HCHS school sports.

183.    As a direct result of the Defendants' failure to investigate or otherwise pursue payment of nonresident tuition against the Kellys, the Transfer Student has been allowed to attend school within the district on a tuition-free basis, unlike all other HCHS students, and to take a starting position on the sports teams over resident students, including Plaintiff.

184.    By Defendants' violations of the Illinois School Code, Plaintiff, as a resident student, lost the starting position on the team, received less practice time with the team, received minimal playing time at games, loss of opportunity related to college prospects, and experienced emotional distress and mental anguish.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages, punitive damages, plus costs, attorney's fees, disbursements, and other such relief as this Court deems just and fair.

## NINTH CLAIM

### AGAINST ALL DEFENDANTS

### CIVIL CONSPIRACY

185.    Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1-70, 91-92, 94-95, 101, 103-107, and 147-185 as if fully set forth herein.

186.    Defendant football coaches and/or assistant coaches induced or otherwise encouraged Brian Kelly and/or Nicole Kelly to obtain housing within the school district for the sole purpose of their son's participation on the 2024-2025 Varsity Football team in a starting position.

187.     Thereafter, in approximately November of 2023, Brian Kelly obtained temporary housing within the school district and transferred his son to the HCHS school district.

188.     Upon information and belief, the Kellys and Defendant coaches knowingly and intentionally concealed information regarding the Kelly's <u>permanent</u> residence from HCHS administration for their son to participate on the football team.

189.     On September 18, 2024, Plaintiff's parent notified Zimmerman and Walters of the transfer, residency, and eligibility issues regarding the Transfer Student.

190.     On or before September 25, 2024, all Defendants were placed on notice of the residency and eligibility issues regarding the Transfer Student.

191.     Thereafter, Defendants failed to properly investigate the matter, concealed residency issues from the IHSA in furtherance of their desire and interest to keep the Transfer Student in the starting position on the team during the season, failed to initiate a residency inquiry or hearing for the Transfer Student, failed to request an eligibility hearing from IHSA, and unilaterally determined that the Transfer Student was eligible to play on the team and remain in the school district free of the charge of tuition.

192.     The Transfer Student, as nonresident of the district, obtained a starting position on the HCHS Varsity Football team for the 2024-2025 season, thereby taking the position of Plaintiff's place on the team, who properly resides within the school district.

193.     By Defendants' actions, Plaintiff, was denied opportunity to participate in a

starting position on the HCHS football team, received less practice time with the

team, received minimal playing time at games, loss of opportunity related to

college prospects, and experienced emotional distress and mental anguish as a

result.

WHEREFORE, Plaintiff demands judgment in an amount to be established at

trial for compensatory damages, punitive damages, plus costs, attorney's fees,

disbursements, and other such relief as this Court deems just and fair.

## TENTH CLAIM

### AGAINST ALL DEFENDANTS

### AIDING AND ABETTING

194.     Plaintiff realleges and reincorporates the facts alleged in Paragraphs 1-70,

91-92, 94-95, 101, 103-107, and 147-194 as if fully set forth herein.

195.     Upon information and belief, in the summer or fall of 2023, Zimmerman

and/or other assistant coaches under his supervision, induced or otherwise

encouraged the Kellys to obtain a residence within the HCHS school district for

the sole purpose of the Transfer Student playing in a starting position on the

HCHS football team.

196.     In approximately November of 2023, the Kellys did, in fact, obtain

temporary housing, within the HCHS school district based upon their desire for

the Transfer Student to play in the starting position on the HCHS football team.

197.     Upon information and belief, Zimmerman and/or assistant coaches under

his supervision were aware that the Kellys did not permanently relocated to the

State of Illinois.

198.     In June of 2024, the Transfer Student was in attendance for the 2024 summer football camp at HCHS.

199.     On August 8, 2024, the Transfer Student and the Kellys hosted a cookout for the HCHS football team at their permanent residence in Wisconsin.

200.     On or before September 18, 2024 and no later than September 25, 2025, Defendants knew that there was inquiry into the permanent residence of the Transfer Student and his family and his eligibility to play for the HCHS football team under IHSA by-laws.

201.     With the exception of one game in which he was found ineligible to play by the IHSA, Defendants allowed the Transfer Student to play in the starting position on the team for the entire 2024-2025 football season.

202.     The HCHS administration, coaches, and school board have a duty to investigate, ensure, and report that all students are residents of the school district and eligible to play in interscholastic competitions.

203.     By their failure to act and/or failure to properly investigate residency and eligibility claims, Defendants acquiesced, encouraged, consented to, and facilitated the residency fraud committed by the Kellys and ineligibility of the Transfer Student on the football team.  In doing so, Defendants allowed a nonresident student access to free tuition for education and placement in a starting position on the HCHS football team over all other resident students, including Plaintiff.

204.     Plaintiff, was denied the opportunity to participate in a starting position on

the HCHS football team, received less practice time with the team, received minimal playing time at games, loss of opportunity related to college prospects, and experienced emotional distress and mental anguish as a result of Defendant's actions and inactions.

WHEREFORE, Plaintiff demands judgment in an amount to be established at trial for compensatory damages, punitive damages, plus costs, attorney's fees, disbursements, and other such relief as this Court deems just and fair.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a trial by jury would be available. Fed. R. Civ. P. 38.

DATED: _____4-3_____, 2025.

Respectfully submitted:

By:_____
KELLY A. VECCHIO,
Attorney for Plaintiff.

Prepared by:
KELLY A. VECCHIO, #6276098
Vecchio Law Offices
One Court Place, Suite 101
Rockford, IL 61101
(815) 962-4019
kelly@vecchiolawoffices.com